UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, N.A., AS TRUSTEE
FOR THE REGISTERED HOLDERS OF CREDIT
SUISSE FIRST BOSTON MORTGAGE
SECURITIES CORP., COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-C2, BY AND
THROUGH ITS SPECIAL SERVICER,
CWCAPITAL ASSET MANAGEMENT LLC,

16-cv-09112 (LGS)

Plaintiff,

**DEFENDANT 390 PARK AVENUE
ASSOCIATES, LLC'S AMENDED
ANSWER AND AFFIRMATIVE
DEFENSES AND
COUNTERCLAIMS TO THE
COMPLAINT FOR FORECLOSURE
OF A LEASEHOLD MORTGAGE**

- against -

390 PARK AVENUE ASSOCIATES, LLC; *et al.*,

Defendants,

Defendant and counterclaim plaintiff 390 Park Avenue Associates, LLC ("390 Park"), by

its undersigned counsel, hereby submits its amended answer and affirmative defenses and

counterclaims to the Complaint for Foreclosure of a Leasehold Mortgage, dated November 22,

2016 (Dkt. 1) (the "Complaint").[1]  390 Park denies all allegations made in the Complaint,

whether express or implied, that are not specifically admitted below.  The headings and

unnumbered contents, recitations, assertions, and conclusions contained within the Complaint are

not substantive allegations to which a response is required.  To the extent that such headings and

unnumbered matter are intended as substantive allegations, 390 Park denies those allegations.

390 Park responds to the specific allegations in the Complaint as follows:

**PARTIES**

1.       390 Park denies knowledge or information sufficient to form a belief as to the

---

[1]       Terms used in this Amended Answer and Affirmative Defenses and Counterclaims to the
Complaint for Foreclosure of a Leasehold Mortgage ("Amended Answer") shall have the
meaning ascribed to them in the Complaint (Dkt. No. 1) unless otherwise defined herein.

truth or falsity of the allegations in Paragraph 1.

2.     390 Park admits (i) the allegations in the first sentence of Paragraph 2; (ii) that it possesses certain property interests in the leasehold interest created under and described in the Ground Lease; and (iii) that Wells Fargo Bank, N.A., ("Plaintiff" or "Wells Fargo") purports to have brought this action for the reasons set forth in the second sentence of Paragraph 2.  To the extent the allegations in Paragraph 2 state legal conclusions regarding the terms of, and any rights and obligations under, the Loan Documents, no responsive pleading is required.  To the extent that Plaintiff purports to cite the terms of the Loan Documents, which were attached to the Complaint, 390 Park respectfully refers the Court to the actual Loan Documents for a complete and accurate statement of their contents.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 2 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 2 as to others.

3.     390 Park admits that Mr. Aby Rosen is a natural person who may be contacted c/o RFR Holding LLC, 390 Park Avenue, New York, New York 10022.  Otherwise, except as expressly admitted, 390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 3, except states that Mr. Aby J. Rosen was voluntarily dismissed from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(2) on March 31, 2017 (Dkt. No. 52).

4.     390 Park admits that Mr. Michael Fuchs is a natural person who may be contacted c/o RFR Holding LLC, 390 Park Avenue, New York, New York 10022.  Otherwise, except as expressly admitted, 390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 4, except states that Mr. Michael Fuchs was voluntarily dismissed from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(2)

on March 31, 2017 (Dkt. No. 52).

5.      390 Park admits that Mr. Harry Lis is a natural person.  Otherwise, except as expressly admitted, 390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 5, except states that Mr. Harry Lis was voluntarily dismissed from this action pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(2) on March 31, 2017 (Dkt. No. 52).

6.      To the extent the allegations in Paragraph 6 state legal conclusions regarding the existence or validity of any mechanic's lien, no responsive pleading is required.  Otherwise, 390 Park denies the allegations in Paragraph 6 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 6 as to others.

7.      To the extent the allegations in Paragraph 7 state legal conclusions regarding the existence or validity of any judgment, no responsive pleading is required.  Otherwise, 390 Park denies the allegations in Paragraph 7 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 7 as to others.

8.      To the extent the allegations in Paragraph 8 state legal conclusions regarding the existence or validity of any mechanic's lien, no responsive pleading is required.  Otherwise, 390 Park denies the allegations in Paragraph 8 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 8 as to others.

9.      390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9.

10.      390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10.

11.      390 Park denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph 11.

12.     To the extent the allegations in Paragraph 12 state legal conclusions regarding the existence or validity of any amounts purportedly owing, no responsive pleading is required. Otherwise, 390 Park denies the allegations in Paragraph 12 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 12 as to others.

13.     390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13.

14.     390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14.

## JURISDICTION AND VENUE

15.     390 Park admits that (i) the principal amount of the Note exceeds $75,000; and (ii) that Plaintiff purports to have brought this action in federal court pursuant to 28 U.S.C. §1332(a).  To the extent the allegations in Paragraph 15 state legal conclusions regarding subject matter jurisdiction, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 15 as to itself and as to the alleged diversity of citizenship of the parties, and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to others.[2]

16.     To the extent the allegations in Paragraph 16 state legal conclusions regarding the corporate identity of Wells Fargo pursuant to 28 U.S.C. §1348, no responsive pleading is required.  Otherwise, 390 Park denies knowledge or information sufficient to form a belief as to

---

[2]     390 Park acknowledges that this Court denied its motion to dismiss for lack of subject matter jurisdiction on diversity grounds (Dkt. No. 53).  Nonetheless, 390 Park respectfully reserves all arguments regarding any issues addressed in the parties' briefing and the Court's decision on the motion to dismiss.

the truth or falsity of the allegations in Paragraph 16.

17.     390 Park admits that it is not a citizen or resident of the State of South Dakota.
Otherwise, 390 Park denies knowledge or information sufficient to form a belief as to the truth or
falsity of the allegations in Paragraph 17.

18.     To the extent the allegations in Paragraph 18 state legal conclusions regarding
personal jurisdiction, no responsive pleading is required.  To the extent that Plaintiff relies on the
Loan Documents relating to issues of personal jurisdiction, 390 Park respectfully refers the Court
to the actual Loan Documents for a complete and accurate statement of their contents.

19.     390 Park admits that the property that is the subject of this action is located in the
Southern District of New York.  To the extent the allegations in Paragraph 19 state legal
conclusions regarding the propriety of venue, no responsive pleading is required.  Otherwise, to
the extent that Plaintiff relies on the Loan Documents relating to issues of venue, 390 Park
respectfully refers the Court to the actual Loan Documents for a complete and accurate statement
of their contents.

## FACTS

20.     390 Park admits the allegations in Paragraph 20, except states that the Second
Amendment of Lease is dated March 18, 2001, not March 19, 2001.

21.     390 Park admits that it executed the Note and Loan Agreement, each dated March
9, 2005, and respectfully refers the Court to the actual Note and Loan Agreement for a complete
and accurate statement of their contents (*see* Complaint, Exs. A, B).  To the extent the allegations
in Paragraph 21 state legal conclusions regarding any rights or obligations under the Note or
Loan Agreement, no responsive pleading is required.  Otherwise, except as expressly admitted,
390 Park denies the allegations in Paragraph 21 as to itself and denies knowledge or information

sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 21 as to others.

22.      390 Park admits that it executed the Mortgage, dated March 9, 2005, and respectfully refers the Court to the actual Mortgage for a complete and accurate statement of its contents (*see* Complaint, Ex. C).  To the extent the allegations in Paragraph 22 state legal conclusions regarding any rights or obligations under the terms of the Mortgage, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 22 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 22 as to others.

23.      390 Park admits (i) that the Mortgage was filed and recorded in the Office of the City Register of the City of New York on April 28, 2005, in the county in which the Property was then and is now situated, on April 28, 2005, under City Register File Number 2005000247542 and Document Identification Number 2005031500311006; and (ii) that the block and lot indexing for the Property is Block 1289, Lot 36, Borough of Manhattan; and respectfully refers the Court to the actual Mortgage and recordation documents for a complete and accurate statement of their contents (*see* Complaint, Ex. C).  To the extent the allegations in Paragraph 23 state legal conclusions regarding any rights or obligations under the terms of the Mortgage, the priority or perfection of any security, or the sufficiency of any recordation of the Mortgage, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 23 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 as to others.

24.      390 Park admits the allegations in Paragraph 24, and respectfully refers the Court to the actual recordation documents for a complete and accurate statement of their contents (*see* Complaint, Ex. C).

25.     390 Park admits (i) it executed the ALR, dated March 9, 2005; and (ii) the ALR was filed and recorded in the Office of the City Register of the City of New York, in the county in which the Property was then and is now situated, on April 28, 2005, under City Register File Number 2005000247543 and Document Identification Number 2005031500311007; and respectfully refers the Court to the actual ALR and recordation documents for a complete and accurate statement of their contents (*see* Complaint, Ex. D).  To the extent the allegations in Paragraph 25 state legal conclusions regarding any rights or obligations under the terms of the ALR, the priority or perfection of any security, or the sufficiency of any recordation of the ALR, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 25 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 25 as to others.

26.     390 Park admits the UCC Financing Statements were filed with the Office of the City Register of the City of New York on April 28, 2005, under City File Register Number 2005000247547 and Document Identification Number 2005031500311011, and with the Delaware Department of State U.C.C. Filing Section on March 28, 2005, under Initial Filing Number 5094225 1, and respectfully refers the Court to the actual Financing Statements for a complete and accurate statement of their contents (*see* Complaint, Exs. E, F).  To the extent the allegations in Paragraph 26 state legal conclusions regarding the priority or perfection of any security or the sufficiency of any recordation of the Financing Statements, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 26 as to itself and denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 26 as to others.

27.     390 Park admits that the Loan Agreement contemplates the execution of the

Guaranty Agreement, but denies that it executed the Guaranty Agreement.  To the extent that the

Guaranty Agreement is one of the Loan Documents, as that term is defined in the Loan

Agreement, 390 Park respectfully refers the Court to the actual Loan Documents for a complete

and accurate statement of their contents.  To the extent the allegations in Paragraph 27 state legal

conclusions regarding any rights or obligations under the Guaranty Agreement, no responsive

pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in

Paragraph 27 as to itself and denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations in Paragraph 27 as to others.

   28. To the extent the allegations in Paragraph 28 state only definitions, no responsive

pleading is required, but to the extent a response is required, 390 Park admits that Plaintiff

purports to define the various Loan Documents as set forth in Paragraph 28, and respectfully

refers the Court to each of those Loan Documents for a complete and accurate statement of their

contents.

   29. 390 Park admits that the Original Lender purported to transfer its interest to

Plaintiff, and respectfully refers the Court to the actual Note and the undated Allonge for a

complete and accurate statement of their contents (*see* Complaint, Ex. A).  To the extent the

allegations in Paragraph 29 state legal conclusions regarding the validity of any assignment of

the interest in the Note, no responsive pleading is required.  Otherwise, except as expressly

admitted, 390 Park denies the allegations in Paragraph 29, including but not limited to the

validity of any assignment of the interest in the Note.

   30. 390 Park admits that the Mortgage Assignment was filed and recorded in the

Office of the City Register of the City of New York on April 24, 2007, under City File Register

Number 2007000211845 and Document Identification Number 2007041000874001, and

respectfully refers the Court to the actual Mortgage Assignment for a complete and accurate statement of its contents (*see* Complaint, Ex. G).  To the extent the allegations in Paragraph 30 state legal conclusions regarding the validity of any assignment of the Mortgage, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 30, including but not limited to the validity of any assignment of the Mortgage.

31.     390 Park admits that the ALR Assignment was filed and recorded in the Office of the City Register of the City of New York on January 11, 2007, under City File Register Number 2007000021543 and Document Identification Number 2006121801896002, and respectfully refers the Court to the actual ALR Assignment for a complete and accurate statement of its contents (*see* Complaint, Ex. H).  To the extent the allegations in Paragraph 31 state legal conclusions regarding the validity of any assignment of the ALR, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 31, including but not limited to the validity of any assignment of the ALR.

32.     390 Park admits that the Original Lender purported to assign its interest in the Loan Agreement and the Guaranty Agreement pursuant to an undated General Assignment, claiming to have an "Effective Date" of "5/26/05," and respectfully refers the Court to the actual General Assignment for a complete and accurate statement of its contents (*see* Complaint, Ex. I). To the extent the allegations in Paragraph 32 state legal conclusions regarding the validity of any assignment of any of the Loan Documents, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 32, including but not limited to the validity of any assignment of the Loan Documents.

33.     390 Park admits that UCC Financing Statement Amendments were filed with the Office of the City Register of the City of New York on January 11, 2007 under City File Register

Number 2007000021542 and Document Identification Number 2006121801896001, and the

Delaware Department of State U.C.C. Filing Section on July 11, 2007 under File Number

20072618659, and respectfully refers the Court to the actual UCC Financing Statement

Amendments for a complete and accurate statement of their contents (*see* Complaint, Exs. J, K).

To the extent the allegations in Paragraph 33 state legal conclusions regarding the priority or

perfection of any security, the sufficiency of any recordation of the Financing Statements, or the

validity of the substitution of Plaintiff for Original Lender with respect to lien and security

interests in the Property, no responsive pleading is required.  Otherwise, except as expressly

admitted, 390 Park denies the allegations in Paragraph 33, including but not limited to the

priority or perfection of any security, the sufficiency of any recordation of the Financing

Statements, or the validity of the substitution of Plaintiff for Original Lender with respect to lien

and security interests in the Property.

34.     390 Park admits that additional UCC Financing Statement Amendments were

filed with (a) the Office of the City Register of the City of New York on (i) November 13, 2009

under City File Register Number 2009000372873 and Document Identification Number

2009111000316001, and (ii) November 20, 2014 under City File Register Number

2014000385878 and Document Identification Number 2014111800882001; and (b) the Delaware

Department of State U.C.C. Filing Section on (i) November 9, 2009 under File Number

20093590921, and (ii) October 20, 2014 under File Number 20144202958, and respectfully

refers the Court to the actual UCC Financing Statement Amendments for a complete and

accurate statement of their contents (*see* Complaint, Exs. L, M, N, O).  To the extent the

allegations in Paragraph 34 state legal conclusions regarding the validity, priority, or perfection

of lien and security interests in the Property or the sufficiency of any recordation of the

Financing Statements, no responsive pleading is required.  Otherwise, except as expressly

admitted, 390 Park denies the allegations in Paragraph 34, including but not limited to the

validity, priority, or perfection of lien and security interests in the Property or the sufficiency of

any recordation of the Financing Statements.

35.     To the extent the allegations in Paragraph 35 state legal conclusions regarding (i)

the validity of the assignment of any of the Loan Documents, (ii) CWCapital Asset Management

LLC's ("CWCapital") appointment as special servicer for the Loan, or (iii) the rights and

obligations of CWCapital under the Loan Documents, no responsive pleading is required.

Otherwise, 390 Park denies the allegations in Paragraph 35, including but not limited to the

validity of the assignment of any of the Loan Documents, CW Capital's appointment as special

servicer for the Loan, and the rights and obligations of CW Capital under the Loan Documents.

36.     390 Park admits that Plaintiff selectively quotes the Note, and respectfully refers

the Court to the actual quoted Note for a complete and accurate statement of its contents (*see*

Complaint, Ex. A).  To the extent the allegations in Paragraph 36 state legal conclusions

regarding the terms of the Note, no responsive pleading is required.

37.     390 Park admits that Plaintiff selectively quotes the Loan Agreement, and

respectfully refers the Court to the actual quoted Loan Agreement for a complete and accurate

statement of its contents (*see* Complaint, Ex. B).  To the extent the allegations in Paragraph 37

state legal conclusions regarding the terms of the Loan Agreement, no responsive pleading is

required.

38.     390 Park admits that it did not pay off the Loan on or before March 11, 2015.  To

the extent the allegations in Paragraph 38 state legal conclusions regarding the terms of the Note

or Loan Agreement, no responsive pleading is required.  Otherwise, except as expressly

admitted, 390 Park denies the allegations in Paragraph 38.

39.     390 Park admits that Venable LLP sent a letter dated March 19, 2015, "as counsel

to CWCAM [CWCapital Asset Management LLC] acting solely in its capacity as Special

Servicer to the Trust," stating that an event of default had occurred for its failure to repay the

Loan on or before March 11, 2015, and respectfully refers the Court to the actual letter for a

complete and accurate statement of its contents (*see* Complaint, Ex. P).  Otherwise, except as

expressly admitted, 390 Park denies the allegations in Paragraph 39.

40.     390 Park admits that it has not paid off the Loan.  To the extent the allegations in

Paragraph 40 state legal conclusions regarding the terms of, and rights and obligations under, the

Loan Documents, no responsive pleading is required.  Otherwise, except as expressly admitted,

390 Park denies the allegations in Paragraph 40.

## CAUSE OF ACTION
### (Foreclosure of the Mortgage)

41.     390 Park repeats and realleges each and every response set forth in the foregoing

paragraphs as if fully set forth herein.

42.     390 Park admits that Plaintiff purports to paraphrase terms of the Loan

Documents, and respectfully refers the Court to the actual paraphrased documents for a complete

and accurate statement of their contents.  To the extent the allegations in Paragraph 42 state legal

conclusions regarding the terms of the Loan Documents, no responsive pleading is required.

Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 42.

43.     To the extent the allegations in Paragraph 43 state legal conclusions regarding the

terms of, and rights and obligations under, the Loan Documents, no responsive pleading is

required.  Otherwise, 390 Park denies the allegations in Paragraph 43.

44.     390 Park admits that Plaintiff purports to paraphrase terms of the Loan

Documents and make certain calculations thereunder, and respectfully refers the Court to the actual paraphrased documents for a complete and accurate statement of their contents.  To the extent the allegations in Paragraph 44 state legal conclusions regarding the terms of, and rights and obligations under, the Loan Documents, including any calculations of amounts thereunder, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 44.

45.     To the extent the allegations in Paragraph 45 state legal conclusions regarding the terms of, and rights and obligations under, the Loan Documents, no responsive pleading is required.  Otherwise, 390 Park denies the allegations in Paragraph 45.

46.     390 Park admits that it has not paid off the Loan.  To the extent the allegations in Paragraph 46 state legal conclusions regarding the terms of, and rights and obligations under, the Loan Documents, including "sums owing under the Loan Documents," no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 46.

47.     390 Park admits that Plaintiff selectively quotes the Mortgage, and respectfully refers the Court to the actual quoted Mortgage for a complete and accurate statement of its contents (*see* Complaint, Ex. C).  To the extent the allegations in Paragraph 47 state legal conclusions regarding the terms of the Mortgage, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 47.

48.     390 Park admits that Plaintiff selectively quotes the Loan Agreement, and respectfully refers the Court to the actual quoted Loan Agreement for a complete and accurate statement of its contents (*see* Complaint, Ex. B).  To the extent the allegations in Paragraph 48 state legal conclusions regarding the terms of the Loan Agreement, no responsive pleading is

required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 48.

49.     390 Park admits that (i) Plaintiff purports to paraphrase terms of the Loan Documents; and (ii) Venable LLP sent a letter, dated March 19, 2015, "as counsel to CWCAM [CWCapital Asset Management LLC] acting solely in its capacity as Special Servicer to the Trust," stating that an event of default had occurred for its failure to repay the Loan on or before March 11, 2015, and respectfully refers the Court to the actual Loan Documents and letter for a complete and accurate statement of their contents.  To the extent the allegations in Paragraph 49 state legal conclusions regarding the terms of, and rights and obligations under, the Loan Documents, or the contents of the letter, no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park denies the allegations in Paragraph 49.

50.     390 Park admits that is not aware, as of the date of this Amended Answer, of any other action or proceeding seeking foreclosure of the Mortgage or recovery under the Note.  Otherwise, except as expressly admitted, 390 Park denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 50.

51.     To the extent the allegations in Paragraph 51 state legal conclusions regarding the satisfaction of any conditions precedent to this action, no responsive pleading is required.  Otherwise, 390 Park denies the allegations in Paragraph 51.

52.     390 Park admits that Plaintiff makes certain requests of the Court in Paragraph 52, to which no responsive pleading is required.  Otherwise, except as expressly admitted 390 Park denies the allegations in Paragraph 52.

53.     390 Park admits that Plaintiff makes certain requests of the Court in Paragraph 53, to which no responsive pleading is required.  Otherwise, except as expressly admitted, 390 Park

denies the allegations in Paragraph 53.

*       *       *       *       *

The unnumbered contents, recitations, assertions, and conclusions contained under the text "WHEREFORE" (Complaint at pp.14-15) are not substantive allegations to which a response is required.  To the extent that such unnumbered matter is intended as substantive allegations, 390 Park denies those allegations.

## AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Without assuming any burden of proof, persuasion, or production not otherwise legally assigned to them as to any element of Plaintiff's claims, 390 Park asserts the following affirmative defenses.

### FIRST AFFIRMATIVE DEFENSE
**(Lack of Subject Matter Jurisdiction)**[3]

54.     Plaintiff's claims against 390 Park should be dismissed because, as the evidence will show, Plaintiff is not the real party in interest, the real and substantial party to the controversy, and because the Plaintiff colluded with the Special Servicer and the controlling bondholder to strategically select the party to name as plaintiff to generate subject matter jurisdiction.

55.     Even if Plaintiff holds beneficial title to the assets of the Trust under the operative Pooling and Servicing Agreement ("PSA"), Plaintiff has, on information and belief, no real involvement with the foreclosure litigation or even the administration of the corpus of the Trust.

---

[3]     As noted above, 390 Park acknowledges that this Court denied its motion to dismiss for lack of subject matter jurisdiction (Dkt. No. 53).  Nonetheless, 390 Park respectfully reserves all arguments regarding any issues addressed in the parties' briefing and the Court's decision on the motion to dismiss, and expects that the evidence will show that Plaintiff is not, in fact, the real party in interest, is not the "master of the litigation," and the controlling bondholder is the real party controlling the litigation.

Plaintiff is not the master of the litigation and, thus, a strategic selection of the Plaintiff is collusive, and jurisdiction is improper here.

56.    On information and belief, the controlling bondholder has the right under the PSA to direct the filing of this foreclosure action and, in fact, did exactly that.  Furthermore, on information and belief, the controlling bondholder is directing the Special Servicer's actions and the prosecution of this foreclosure action, rendering it a relevant party for diversity purposes. Indeed, all communications between 390 Park and the Plaintiff have been with CWCapital alone or, according to CWCapital, at the behest of the controlling bondholders.  390 Park has never spoken to a representative of Wells Fargo regarding this matter, nor has CWCapital purported to be communicating a message on Wells Fargo's, as opposed to the controlling bondholders,' behalf.

57.    On information and belief, at least one of the controlling bondholders is a citizen of the State of New York, as is 390 Park, and diversity jurisdiction is therefore improper, as a result of which this Court lacks subject matter jurisdiction.

**SECOND AFFIRMATIVE DEFENSE AND**
**FIRST COUNTERCLAIM AGAINST PLAINTIFF**
**(Clogging the Equity of Redemption / Declaratory Judgment)**

58.    Plaintiff's claims against 390 Park are barred, in whole or in part, because each of the structure of the Loan, its provisions, and the specific provisions and manner in which the eventual securitization was handled, were intended to work together to clog the equity of redemption, a nonwaivable right of borrowers under New York law and public policy, invalidating the Mortgage and causing damages to 390 Park.

59.    As such, 390 Park also asserts a counterclaim arising out of arising out of this clogging of the equity of redemption.

16

60.     At the time the loan was originated, the Loan was designed to allow the Lender to simultaneously take a mortgage on the Property and a loan collateralized by the pledge of membership interests in the Borrower (the "Equity Pledge").  It was also designed to allow securitization, as discussed more fully below, governed by a separate PSA that granted various other rights and options that, along with other provisions in the Loan and Mortgage, were intended to clog the equity of redemption.

61.     Indeed, the structure and provisions of the Loan, Mortgage, and PSA was all part of a plan intended to place multiple barriers at every step along the way to cut off, clog, or otherwise fetter the Borrower's exercise of its equity of redemption.  This scheme was intended to allow Lender, if any default occurred under the Loan, to foreclose, take control of the Property, and prevent Borrower from exercising its right to redeem the Property before the end of the foreclosure action.

62.     Indeed, under Section 9.1.2 of the Loan, the Lender had the unilateral right after closing and before securitization, in its sole discretion to (i) establish different interest rates and reallocate the amortization and principal balances of each of the Loan and Equity Pledge between each other and to require payment of the Loan and Equity Pledge in such order of priority as the Lender prescribed (9.1.2(a)); and (ii) create one or more additional equity pledge loans, establish different interest rates and reallocate principal balances between the Loan, Equity Pledge, and any potential further equity pledges, and require payment in such order of priority as the Lender prescribed (9.1.2(b)).  In sum, this enabled the Lender, in its sole discretion, to effectively shift around at will the outstanding principal balances and order of payment priority between the Loan and Equity Pledge.  This was only part of the interlocking provisions and structure designed to clog the equity of redemption.

63.     Moreover, Section 13 of the applicable intercreditor agreement granted the Equity Pledge, who then held both the Loan and the Equity Pledge, an option to purchase the Mortgage Loan.  This was part and parcel of a structure intentionally created to clog the equity of redemption from the very beginning.  By foreclosing on the Equity Pledge through a non-judicial Uniform Commercial Code ("UCC") foreclosure, the Lender could quickly foreclose out all of Borrower's equity in the Property without any of the protections of a judicial mortgage foreclosure, effectively eliminating the Borrower's equity of redemption.

64.     Other provisions in the Loan Documents further highlight this intended clog on the equity of redemption.  For example, the Mortgage, as a remedy after default, allows the Lender to sell for cash or upon credit any part or all of the Property including any "rights of redemption thereof."  Mortgage at §7.1(d).  It is impermissible under New York law to attempt to sell the equity of redemption, a nonwaivable element of New York public policy.

65.     Faced with the very real threat that the Equity Pledge would wipe out its equity of redemption due to these features of the relevant agreements, Borrower, through an affiliate, had no other choice but to purchase the Equity Pledge for well above its par value (108% of the then outstanding principal balance).  Borrower was compelled to take control of the Equity Pledge at greater than face value to attempt to protect its ability to exercise its equity of redemption.  Due to the other features of the Loan Documents and PSA, merely taking control of the Equity Pledge, however, was not enough, and Borrower, and its affiliates, have suffered multiple millions of dollars in connection with its compelled acquisition of the Equity Pledge.

66.     Given the structure of the Loan and Mortgage and the securitization documents, it is plain that the Lender intended to clog the equity of redemption.  As a consequence, 390 Park is entitled to (i) declaratory judgment invalidating the Mortgage, and (ii) damages caused to 390

Park and its affiliates, including, but not limited to, the costs associated with acquiring the Equity Pledge in an attempt to unclog its equity of redemption and reasonable attorneys' fees and disbursements.

### THIRD AFFIRMATIVE DEFENSE
**(Lack of Standing / Assignment of Mortgage Invalid)**

67.    Plaintiff's claims against 390 Park are barred, in whole or in part, because Plaintiff does not have standing to bring this action because the mortgage was not validly assigned to it.

68.    The Mortgage was "made as of this March 9, 2005."  Complaint, Ex. C.

69.    Likewise, the Note was "made this March 9, 2005."  Complaint, Ex. A.

70.    Yet, the Mortgage Assignment, which was recorded in the Office of the City Register of the City of New York on April 24, 2007, was "made and entered into as of this 8* day of March 2005."  Complaint, Ex. G (Dkt. No. 1-10 at 5).

71.    Although the Mortgage Assignment purports to be forward dated and have an "Effective Date" of May 26, 2005, the Mortgage Assignment purports to assign "all of Assignor's right, title and interest in and to the Mortgage."  As of March 8, 2005, the Assignor had no rights in the Mortgage because it did not yet exist.

72.    Similarly, the Note itself was "made this March 9, 2005," (Complaint, Ex. A (Dkt. No. 1-1 at 2) and was purportedly transferred by an undated allonge (*id.* (Dkt. No. 1-1 at 9)) and then purportedly transferred again — it is unclear whether before or after — by an undated General Assignment purporting to be forward dated to a later "Effective Date." Complaint, Ex. I (Dkt. No. 1-12 at 5).

73.    Given these facts, Plaintiff has not demonstrated that all of the Loan Documents were validly assigned to it and that it has standing to bring this action, and this action should be

dismissed.  Moreover, Plaintiff must produce the original Note and Allonge.

## FOURTH AFFIRMATIVE DEFENSE
## AND SECOND COUNTERCLAIM AGAINST PLAINTIFF
### (Failure to Mitigate Damages / Setoff / Laches)

74.     Plaintiff's claims against 390 Park are barred, in whole or in part, because Plaintiff has failed to mitigate damages or set off amounts recovered since March 11, 2015 against the amount allegedly owed under the Loan Documents.

75.     Since March 11, 2015, Plaintiff has collected significant rents and other sums deposited into the Property's accounts, which the Plaintiff and its agents control, and such amounts must reduce any amount allegedly owed under the Loan Documents.

76.     Plaintiff also, by attempting to clog the equity of redemption as discussed above, caused Borrower's affiliates to incur substantial costs purchasing the Equity Pledge to attempt to protect its right to redeem the Property, and such amounts should set off against the alleged damages.

77.     Similarly, the long delay in seeking foreclosure has contributed to the untimely and improper accumulation of significant amounts of default interest, which amounts are barred, in whole or in part.

## FIFTH AFFIRMATIVE DEFENSE
### (Unclean Hands / Inequitable Conduct / Bad Faith)

78.     Plaintiff's claims against 390 Park are barred, in whole or in part, because of Plaintiff's inequitable conduct, unclean hands, and bad faith.

79.     Plaintiff (by and through its special servicer) have engaged in a number of acts that demonstrate Plaintiff's failure to act equitably or in good faith.  For example, on information and belief, Plaintiff obtained an appraisal that claimed that the value of the Ground Lease, the sole collateral for the Loan (as opposed to the Property, which is worth far more), is worth

considerably less than the outstanding amount of the Loan.  If the alleged appraisal's claimed

value were accurate, the foreclosure action would be likely to generate less recovery than other

courses of action and harms Plaintiff's interest and the interest of the Trust beneficiaries (to

whom Plaintiff owes a fiduciary duty to maximize the amounts recovered under this Loan).

Moreover, on information and belief, Plaintiff did not provide that appraisal to the controlling

bondholders, who directed the filing of this action without having all the material facts.

80.     Furthermore, on information and belief, the Plaintiff deprived the controlling

bondholders of their right to purchase the Loan — in addition to failing to inform them of all the

material facts as to the purported appraised value of the Ground Lease — when Plaintiff and

CWCapital failed to provide the Directing Certificateholder (as defined by the PSA) with the

appropriate notices regarding their purchase option under Section 3.18(b) of the PSA.

81.     On information and belief, the Plaintiff also failed to give the landlord under the

Ground Lease ("Ground Lessor") the required prior notice of its option to purchase the Loan

under Section 9.8.4.1 of the Ground Lease prior to the institution of foreclosure proceedings.

Although the Ground Lease prohibits using this notice and right as a defense to the foreclosure,

Ground Lessor did not even have the opportunity to contemplate the existence of, or exercise,

that right when Plaintiff failed to give any such notice.

82.     All of this is part and parcel of Plaintiff's disregard for its duty to act in good

faith, equitably and with clean hands vis-à-vis 390 Park in pursuit of Plaintiff's desire to acquire

the Property at all costs.

## SIXTH AFFIRMATIVE DEFENSE
### (No Deficiency)

83.     To the extent that Plaintiff seeks a deficiency judgment, the sale of the Property

will eliminate or substantially reduce any deficiency, and therefore Plaintiff will be entitled to no

damages.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to State a Claim Upon Which Relief Can Be Granted)

84.     For the reasons set forth in these Affirmative Defenses, including but not limited to Plaintiff's failure to demonstrate that it has standing to bring this action and the improper attempt to clog the equity of redemption, Plaintiff cannot state a claim upon which the relief it seeks may be granted, and the action should consequently be dismissed.

## EIGHTH AFFIRMATIVE DEFENSE
### (Improperly Named Defendants / Invalid Mechanics' Liens)

85.     In its Complaint, Plaintiff names a number of other defendants, several of which should not be before this Court because their claims against 390 Park are invalid.

86.     Specifically, Plaintiff named Sell-Mar Enterprise Inc., Gotham Lighting Supply, and A-Val Architectural Metal III LLC, as defendants on the basis of the alleged existence of certain mechanics' liens on the Property.

87.     However, 390 Park was not aware of the existence of the liens before the filing of this Action and, indeed, on information and belief, no affidavits of service were filed in connection with those liens, rendering them invalid as against 390 Park.

88.     On information and belief, these defendants performed work at the Property for a general contractor, but no adjudication of the amounts allegedly owed has occurred.

89.     Moreover, on information and belief, these liens were improperly filed and were based on bona fide issues between the general contractor and each of these lienors. Consequently, the liens are invalid either wholly or in part.

90.     Because these mechanics' liens were not validly or properly perfected, they cannot be foreclosed as a subordinate lien as Plaintiff seeks to accomplish.

**NINTH AFFIRMATIVE DEFENSE**
**(Special Servicer Lacks Authority to Act on Behalf of the Trust)**

91.     According to the PSA, the original Special Servicer for the Trust was J.E. Robert Company, Inc. ("JER").

92.     Pursuant to Section 6.04 of the PSA, JER was not entitled to resign until a successor was appointed and the applicable Rating Agency confirmed to the Trustee that such resignation and appointment would not cause a downgrade of the Certificates.  Furthermore, no attempted resignation is effective until the Trustee and/or successor Special Servicer shall have assumed the rights and obligations under Section 7.02 of the PSA.

93.     Plaintiff has not demonstrated that JER effectively resigned under the PSA or that CWCapital was properly appointed as Special Servicer.  Therefore, on information and belief, the necessary steps and documentation were not duly promulgated, authorized, or executed to relieve JER as Special Servicer and appoint CWCapital in its stead.

94.     Therefore, CWCapital did not have authority to institute this action and it should be dismissed.

**TENTH AFFIRMATIVE DEFENSE AND**
**THIRD COUNTERCLAIM AGAINST PLAINTIFF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

95.     Plaintiff's claims against 390 Park are barred, in whole or in part, because Plaintiff breached the implied covenant of good faith and fair dealing.

96.     390 Park also asserts a counterclaim arising out of Plaintiff's breach of the implied covenant of good faith and fair dealing.

97.     Every contract, including the commercial mortgage loan at issue here, includes the implied covenant of good faith and fair dealing.  Plaintiff, and its agents, were required to exercise any discretionary rights under the contract (such as pursuing foreclosure, among its

other remedies) in good faith and in such a manner as to treat 390 Park fairly.

98.     Plaintiff (by and through its special servicer) engaged in numerous acts that demonstrate Plaintiff's failure to act in accordance with the implied covenant of good faith and fair dealing.  For example, on information and belief, Plaintiff obtained an appraisal that showed that the value of the Ground Lease, the sole collateral for the Loan, is worth considerably less than the outstanding amount of the Loan and likely less than any amount Plaintiff might secure through any workout of the Loan.  In this context, the foreclosure action harms Plaintiff's interest, and the interest of the Trust beneficiaries (to whom Plaintiff owes a fiduciary duty to maximize the amounts recovered under this Loan), and makes no sense other than in the context of Plaintiff's single minded desire to control the Property.  Moreover, on information and belief, Plaintiff did not provide that appraisal to the controlling bondholders, who directed the filing of this action without having all the material facts.

99.     Furthermore, on information and belief, the Plaintiff deprived the controlling bondholders of their right to purchase the Loan when — in addition to failing to inform them of all the material facts as to the appraised value of the Ground Lease in their appraisal — Plaintiff and CWCapital failed to provide the Directing Certificateholder (as defined by the PSA) with the appropriate notices regarding their purchase option under Section 3.18(b) of the PSA.

100.     On information and belief, the Plaintiff also failed to give the landlord under the Ground Lease ("Ground Lessor") the required prior notice of its option to purchase the Loan under Section 9.8.4.1 of the Ground Lease prior to the institution of foreclosure proceedings. Although the Ground Lease prohibits using this notice and right as a defense to the foreclosure, Ground Lessor did not even have the opportunity to contemplate the existence of, or exercise, that right when Plaintiff failed to give any such notice.

101.    All of this is part and parcel of Plaintiff's disregard for its duty to act in good faith and deal fairly with 390 Park.  Plaintiff has deprived 390 Park of its rights under the Loan Agreement and breached the implied covenant of good faith and fair dealing, resulting in damage to 390 Park, including, but not limited to, damages associated with the inability to attract new subtenants to the Property, any subtenants leaving the Property (or imminently leaving the Property) due to the uncertainty introduced by Plaintiff's wrongful conduct, and reasonable attorneys' fees and disbursements.

**ELEVENTH AFFIRMATIVE DEFENSE AND
FOURTH COUNTERCLAIM AGAINST PLAINTIFF**
**(Breach of Fiduciary Duty)**

102.    Plaintiff's claims against 390 Park are barred, in whole or in part, because Plaintiff breached fiduciary duties owed to Borrower.

103.    390 Park also asserts a counterclaim arising out of Plaintiff's breach of fiduciary duties owed to Borrower.

104.    Although fiduciary duties are not imposed as a matter of course on the borrower-lender relationship, fiduciary duties may be imposed under certain circumstances where a confidential relationship is created between the lender and the borrower.  Such confidential relationship is created when trust is reposed by the borrower in the lender with a resulting superiority and influence over, and ability to control, the borrower.

105.    Here, the Plaintiff was aware of the unique structure of the arrangements at the Property, including a Mortgage on the interests in the Ground Lease (rather than the Property) itself, and the existence of a commercially impracticable rent reset contained in that Ground Lease.  Because of those facts, Plaintiff knew it likely had the sole capability to provide the financing in any potential workout or refinancing of the Loan, and therefore was in a unique

position of control and confidence with the Borrower that imposed a fiduciary duty on Plaintiff.

106.    Moreover, before the alleged default, the Property's lockbox account, where the Property's income was deposited, would be routed into the Borrower's operating account, which could be used to pay Borrower's bills and make any payments required by the Loan Documents. However, after the alleged default, all income deposited in the lockbox account is swept automatically and directly into the Property's cash management accounts controlled by the Plaintiff.  In other words, Plaintiff's level of control over the Property's income and accounts after a default dramatically increases, and this control imposes a fiduciary duty on Plaintiff.

107.    For each of these reasons, among others, Plaintiff placed itself in a position of trust and confidence with 390 Park, and then breached those fiduciary duties when it filed the foreclosure action.  These breaches of fiduciary duty have resulted in damage to 390 Park, including, but not limited to, damages associated with the inability to attract new subtenants to the Property, any subtenants leaving the Property (or imminently leaving the Property) due to the uncertainty introduced by Plaintiff's wrongful conduct, and reasonable attorneys' fees and disbursements.

### TWELFTH AFFIRMATIVE DEFENSE
### AND FIFTH COUNTERCLAIM AGAINST PLAINTIFF
**(Tortious Interference with Prospective Economic Relations)**

108.    Plaintiff's claims against 390 Park are barred, in whole or in part, because Plaintiff tortiously interfered with 390 Park's prospective economic relations.

109.    390 Park also asserts a counterclaim arising out of Plaintiff's tortious interference with 390 Park's prospective economic relations.

110.    As noted above, the Plaintiff was aware of the unique structure of the arrangements at the Property, including a Mortgage on the interests in the Ground Lease (rather

than the Property) itself, and the existence of a commercially impracticable rent reset contained in that Ground Lease.  Plaintiff was also aware that 390 Park was engaged in active negotiations with the landlord under the Ground Lease.  Rather than allow 390 Park to conclude its negotiations with the landlord under the Ground Lease, Plaintiff filed the foreclosure action (on information and belief at the direction of the controlling bondholders, who acted without full information) solely to begin the process of collecting on the inflated charges incurred when Plaintiff significantly delayed seeking foreclosure and allowed the accumulation of significant amounts of default interest.

111.    In doing so, Plaintiff knowingly and intentionally interfered with the prospective economic arrangement and business relationship that 390 Park was in the process of negotiating with the landlord under the Ground Lease, used unfair, improper, and wrongful means to accomplish that interference, for the sole purpose of inflicting harm to 390 Park's existing relationship with the landlord under the Ground Lease.

112.    Plaintiff's tortious interference with 390 Park's prospective economic relations have resulted in damage to 390 Park, including, but not limited to, damages associated with the inability to attract new subtenants to the Property, any subtenants leaving the Property (or imminently leaving the Property) due to the uncertainty introduced by Plaintiff's wrongful conduct, and reasonable attorneys' fees and disbursements.

## THIRTEENTH AFFIRMATIVE DEFENSE
### AND SIXTH COUNTERCLAIM AGAINST PLAINTIFF
(Fraudulent Inducement)

113.    Plaintiff's claims against 390 Park are barred, in whole or in part, because Plaintiff fraudulently induced 390 Park to enter into the Loan and Mortgage.

114.    390 Park also asserts a counterclaim arising out of Plaintiff's fraudulent

inducement, causing 390 Park to enter into the Loan and Mortgage.

115.    As noted above, the Original Lender (to which Plaintiff claims to be successor-in-interest) was aware of the unique structure of the arrangements at the Property, including a Mortgage on the interests in the Ground Lease (rather than the Property) itself, and the existence of a commercially impracticable rent reset contained in that Ground Lease.

116.    Over the course of late 2004 and early 2005, leading up to the execution of the Loan Documents, the Original Lender had repeated communications with Borrower as the Loan was being negotiated.  Original Lender inserted provisions in the Loan regarding the Ground Lease, negotiated with Borrower regarding the amount of the Loan, and was fully aware that the combination of the Loan it was proposing and the interests in the Ground Lease (rather than the land itself) that served as collateral for the Loan would ultimately result in 390 Park's inability to repay or refinance the Loan.  Even at closing, the Original Lender declined to disclose the problems that the interplay of the Loan and the unique structure of the Property and the Ground Lease would cause.

117.    Original Lender knew that the amount of the Loan, the proposed structure of the arrangements at the Property, including a Mortgage on the interests in the Ground Lease (rather than the Property) itself, and the existence of a commercially impracticable rent reset contained in that Ground Lease, and the consequent refinanceability, or lack thereof, would effectively cause an inability to repay or refinance the Loan and default thereunder, but the Original Lender purposefully omitted this material fact.  All the while, the Original Lender knew that 390 Park would not have entered into the specific terms of the Loan, if it entered into the Loan at all, if Original Lender had disclosed this omitted material fact.

118.    Over these months of communications leading up to the execution of the Loan

Documents, 390 Park justifiably relied on the Original Lender's omissions of those highly material facts, when it entered into the Loan.  Indeed, at no time from the initial selection of Original Lender to originate the Loan, through the provision of term sheets, drafts of the Loan Documents, or at any time up to and through closing, did Original Lender disclose these material facts.

119.    While Original Lender knew that the rent reset would effectively prevent 390 Park from paying off the Loan or refinancing, Original Lender determined to, and did, induce 390 Park to enter into the Loan anyway so that it and its affiliates and agents could secure millions in fees and charges over the life of the Loan.  Then, once the Original Lender had executed this strategy, it (or a successor) could foreclose upon the Property and generate additional funds through the foreclosure, leaving 390 Park with nothing.

120.    Original Lender fraudulently induced 390 Park to enter into the Loan solely so that Original Lender could collect the significant fees associated with originating the Loan, knowing full well that it would soon be offloading any risk into the securitized CMBS trust with no remaining exposure to it — the very behavior that caused the 2008 financial crisis.

121.    Original Lender's fraudulent inducement, causing 390 Park to enter into the Loan and Mortgage, have resulted in damage to 390 Park, including, but not limited to, damages associated with entering into the Loan and incurring the full outstanding amount of the indebtedness, any consequential damages arising out of Plaintiff's fraudulent inducement, and reasonable attorneys' fees and disbursements.

*          *          *

390 Park reserves the right to raise any additional defenses, counterclaims, cross-claims, and third-party claims not asserted herein of which it may become aware through discovery or

other investigation, as may be appropriate at a later time.

*          *          *

**PRAYER FOR RELIEF**
**ALL COUNTERCLAIMS AGAINST PLAINTIFF**

WHEREFORE, 390 Park prays for judgment dismissing the Complaint, granting

judgment in 390 Park's favor as might be appropriate as follows:

1. For judgment against the Plaintiff and in favor of 390 Park on all counterclaims;

2. For compensatory, general, special, and any other damages, in amounts to be determined according to the proof presented during the course of trial, along with pre-judgment and post-judgment interest at the statutory rate;

3. For punitive damages in an amount to be determined according to the proof presented during the course of trial;

4. For attorneys' fees and costs; and

5. For such other relief as the Court deems just and proper.


Dated: New York, New York
       July 28, 2017

                                        HERRICK, FEINSTEIN LLP


                                        By:  __s/Raymond Nicola  Hannigan_
                                                 Raymond Nicola  Hannigan

                                        Two Park Avenue,
                                        New York, NY 10016
                                        Tel:  (212) 592-1462
                                        Fax: (212) 545-3301
                                        Email:  rhannigan@herrick.com

14063667