UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
WELLS FARGO BANK, N.A., AS TRUSTEE
FOR THE REGISTERED HOLDERS OF
CREDIT SUISSE FIRST BOSTON MORTGAGE
SECURITIES CORP., COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-C2, BY AND
THROUGH ITS SPECIAL SERVICER,
CWCAPITAL ASSET MANAGEMENT LLC,

   Plaintiff,

   v.

390 PARK AVENUE ASSOCIATES, LLC; et al.

   Defendants.

-----------------------------------------------------------x

Case No.: 16-cv-09112 (LGS)

# MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
# MOTION TO DISMISS COUNTERLCAIMS, *WITH PREJUDICE*

      Gregory A. Cross (admitted *pro hac vice*)
      Heather Deans Foley (admitted *pro hac vice*)
      Venable LLP
      750 East Pratt Street, Suite 900
      Baltimore, Maryland 21202
      Telephone: (410) 244-7400

      -and-

      Rishi Kapoor
      Rockefeller Center
      1270 Avenue of the Americas, 24th Floor
      New York, New York 10020
      Telephone: (212) 307-5500

      *Attorneys for Plaintiff*

# TABLE OF CONTENTS

Page(s)

I. PRELIMINARY STATEMENT ........................................................................................1

II. LEGAL STANDARD........................................................................................................1

III. RELEVANT FACTUAL BACKGROUND......................................................................2

IV. LEGAL ARGUMENT.......................................................................................................4

    A. The Borrower Has Not Stated A Claim for Clogging the Equity of Redemption..........................................................................................................4

    B. The Borrower's Counterclaim for "Failure to Mitigate Damages/Setoff/Laches" Should Be Dismissed ........................................................6

    C. The Borrower Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing................................................................8

    D. The Borrower's Claim for Breach of Fiduciary Duty Must Be Dismissed ...................................................................................................................9

    E. The Borrower Has Not Stated a Claim for Tortious Interference With Prospective Economic Relations..........................................................................10

    F. The Borrower Cannot State a Claim of Fraudulent Inducement ...........................11

V. CONCLUSION................................................................................................................14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

1-10 Industry Assocs., LLC v. Trim Corp. of Am.,
  2001 WL 1263509 ...........................................................................................................10

19 Recordings Ltd. v. Sony Music Entertain.,
  165 F. Supp. 3d 156 (S.D.N.Y. 2016) .................................................................................8, 9

Aaron Ferrer & Sons Ltd. v. Chase Manhattan Bank, N.A.,
  731 F.2d 112 (2nd Cir. 1984) ..............................................................................................9, 10

Arnon Ltd. v. Beierwaltes,
  125 A.D.3d 453 (N.Y. App. Div. 1st Dep't 2015) ...............................................................10

Bank Leumi Trust Co. v. Block 3102 Corp.,
  180 A.D.2d 588 (N.Y. App. Div. 1st Dep't 1992) ................................................................9

Berman v. Sugo LLC,
  580 F. Supp. 2d 191 (S.D.N.Y. 2008) ...................................................................................2

Bombardier Capital Inc. v. Naske Air GMBH,
  2003 WL 22137989 (S.D.N.Y. Sept. 17, 2003) ...................................................................12

Camofi Master LDC v. College P'Ship, Inc.,
  452 F. Supp. 2d 462 (S.D.N.Y. 2006) ..............................................................................11, 12

Cognetta v. Valencia Devs., Inc.
  8 A.D.3d 318 (N.Y. App. Div. 2nd Dep't 2004) ...................................................................8

Crotona 1976 Corp. v. Vidu Bros. Corp.,
  925 F. Supp. 2d 298 ...............................................................................................................14

Cruz v. TD Bank, N.A.,
  855 F. Supp. 2d 157 (S.D.N.Y. 2012) ...................................................................................9

Hall v. Ditson,
  5 Abb. Cas. 198 (N.Y. Cty. 1878) ......................................................................................5, 6

Kriegel v. Donelli,
  11 Civ. 9160(ER), 2014 WL 2936000 (June 30, 2014) .......................................................12

LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc.,
  725 F.3d 184 (2nd Cir. 2013) .............................................................................................8, 9

Lujan v. Defenders of Wildlife,
   504 U.S. 555 (1992)......................................................................................................5

McIntosh v. Federal Nat'l Mortgage Assoc.,
   15 CV 8073, 2016 WL 4083434 (S.D.N.Y. July 25, 2016).........................................8

MFW Assocs., LLC v. Plausteiner,
   15 Civ. 2513, 2017 WL 1057311 (S.D.N.Y. March 16, 2017)..................................11

Rajamin v. Deutsche Bank Nat. Trust Co.,
   757 F.3d 79 (S.D.N.Y. 2014)................................................................................5, 6, 9

Riddell Sports Inc. v. Brooks,
   872 F. Supp. 73 (S.D.N.Y. 1995) .........................................................................10, 11

Sado v. Ellis,
   882 F. Supp. 1401 (S.D.N.Y. 1995)...........................................................................12, 14

Schmidt's Wholesale, Inc. v. Miller & Lehman Constr., Inc.,
   173 A.D.2d 1004 (N.Y. App. Div. 3rd Dep't 1991) ......................................................8

Terra Securities ASA Konkursbo v. CitiGroup, Inc.,
   820 F. Supp. 2d 541 (S.D.N.Y. 2011).............................................................................2

Thornack v. Kinderholl Corp.,
   749 F. Supp. 513 (S.D.N.Y. 1990) .................................................................................12

U.S. Bank Nat'l Assoc. v. McPherson,
   No. 30564/10, 951 N.Y.S.2d 84, 2012 WL 1521862 (Queens Cty. April 24,
   2012) ...............................................................................................................................7

Warner Theatre Assocs. L.P. v. Met. Life Ins. Co.,
   97 CIV. 4914(SS), 1997 WL 685334 (S.D.N.Y. Nov. 4, 1997)..................................14

Westinghouse Credit Corp v. D'Urso,
   278 F.3d 138 (2nd Cir. 2002)..........................................................................................7

**Other Authorities**

CPLR § 213(8).....................................................................................................................11

CPLR § 231(4).......................................................................................................................8

Fed. R. Civ. P. 12(b)(6).........................................................................................................1

Plaintiff Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-C2, by and through its Special Servicer, CWCapital Asset Management LLC (the "Trust"), respectfully submits this memorandum of law (the "Memorandum") in support of Plaintiff's Motion to Dismiss Counterclaims, *With Prejudice* (the "Motion").

I. **PRELIMINARY STATEMENT**[1]

Every necessary element exists for summary judgment to be entered allowing the Trust to foreclose immediately against the collateral that secures this defaulted loan. The Borrower admits that it obtained a $110 million loan. The Borrower concedes that it executed the Loan Documents that are before the Court and pledged the Property as collateral for the Loan. The Loan matured on March 11, 2015. The Borrower admits that it did not repay the Loan. Failure to timely repay the Loan is an event of default. The Loan Documents (as with every real estate loan) provide for foreclosure as a remedy upon the occurrence of an event of default.

Recognizing the absence of a substantive defense to the pending foreclosure case, the Borrower has manufactured six baseless "counterclaims" that lack any legal merit and are being advanced solely for purposes of delay. For the Borrower, delay is an end unto itself. The Borrower's motivation is reflected in the facial deficiencies of the "counterclaims" that are the subject of this motion to dismiss, each of which suffers from a myriad of legal deficiencies mandating prompt dismissal.

II. **LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 12(b)(6), dismissal of a claim "is appropriate if the [party] has failed to offer any factual allegations sufficient to render the asserted claim plausible on its face."

---

[1] Capitalized terms used, but not defined herein shall be defined as set forth elsewhere in this Memorandum.

18634212-v6

Terra Securities ASA Konkursbo v. CitiGroup, Inc., 820 F. Supp. 2d 541, 544 (S.D.N.Y. 2011). In reviewing a motion to dismiss, the court will accept all well-pleaded allegations as true, but conclusory allegations and legal conclusions are not entitled to the presumption of truth. See id. at 544-45; see also Berman v. Sugo LLC, 580 F. Supp. 2d 191, 199-200 (S.D.N.Y. 2008). "The pleading standard is one of plausibility: the [party] must allege enough facts to state a claim to relief that is plausible on its face; if the [party] has not nudged its claims across the line from conceivable to plausible, its claim must be dismissed." Berman, 580 F. Supp. 2d at 200 (internal citations and quotation marks omitted).

## III. RELEVANT FACTUAL BACKGROUND

On or about March 9, 2005, 390 Park Avenue Associates, LLC ("Defendant" or the "Borrower"), as obligor, executed and delivered to Column Financial, Inc. ("Original Lender"), as obligee, a Consolidated, Amended and Restated Promissory Note (the "Note") in the stated principal amount of $110,000,000 (the "Loan"), plus interest and other amounts as specified in that certain Loan Agreement dated March 9, 2005 (the "Loan Agreement"). See Complaint at ¶¶ 21; Answer at ¶ 21. The Loan is secured by, among other things, a Consolidated, Amended and Restated Leasehold Mortgage and Security Agreement (the "Mortgage"), which consolidated certain pre-existing mortgages to create a single first-priority mortgage lien and security interest in certain real and personal property, including all of Borrower's right, title, and interest in and to the leasehold estate created under the Ground Lease[2] (collectively, the "Property").[3] See

---

[2] The Borrower, as Tenant, and 390 Tower Associates LLC and 390 Tower Associates, as Landlord (collectively, "Landlord"), are parties to that certain Restated and Amended Agreement of Lease dated as of December 18, 1998, as modified by that certain First Amendment of Lease dated October 10, 2000 and that certain Second Amendment of Lease dated March 19, 2001 (collectively, the "Ground Lease"), pursuant to which Borrower operates a commercial office building on the real property known as 390 Park Avenue, New York, New York.

[3] True and correct copies of the Note, Loan Agreement and Mortgage are attached to the Complaint as Exhibits A, B and C, respectively. See Answer at ¶¶21 & 22.

18634212-v6

Complaint at ¶¶ 22-24; Answer at ¶¶ 22-23. The Note, Loan Agreement and Mortgage, together with all other documents and agreements created or contemplated thereunder, shall collectively be referred to herein as the "Loan Documents." [4]

Borrower is in default under the Loan Documents as a result of its failure to repay the Loan on its stated "Maturity Date" of March 11, 2015. See Complaint at ¶¶ 36-38; Answer at ¶¶ 36-38. To date, Borrower has failed to pay the Loan in full and remains in default under the Loan Documents. See Complaint at ¶ 40; Answer at ¶ 40.

On November 22, 2016, Plaintiff filed the Complaint for Foreclosure of a Leasehold Mortgage (the "Complaint") seeking, among other things, judicial foreclosure of the Mortgage based upon the Loan's maturity default. See Docket No. 1. On January 27, 2017, the Borrower filed a motion to dismiss the Complaint for lack of subject matter jurisdiction, which the Court denied on June 21, 2017. See Docket Nos. 28 and 53.

On July 28, 2017, Borrower filed Defendant 390 Park Avenue Associate LLC's Amended Answer and Affirmative Defenses and Counterclaims to the Complaint for Foreclosure of a Leasehold Mortgage (the "Answer"). See Docket No. 61. In connection with its Answer, Borrower asserted the following six (6) counterclaims against the Trust:

(i) "Clogging the Equity of Redemption" based on the assertion that the existence of a separate loan collateralized by a pledge of membership interests in the Borrower, which was subsequently purchased by the Borrower's affiliate, clogs the Borrower's equitable right to redeem the Mortgage.

---

[4] In its Answer, Borrower admitted that it executed the Note, Loan Agreement and Mortgage and refers the Court to the copies attached to the Complaint. See Answer at ¶¶ 21 and 22.

(ii) "Failure to Mitigate Damages/Setoff/Laches" because the Borrower asserts that the Trust must setoff (a) amounts received in the lockbox and (b) amounts paid by the Borrower's affiliate to purchase the Equity Pledge, against the debt owed to the Trust. The Borrower also asserts that the Trust's "delay" in seeking foreclosure has caused the accumulation of default interest, which amounts must be barred under a laches or failure to mitigate damages theory.

(iii) "Breach of the Implied Covenant of Good Faith and Fair Dealing" based on allegations regarding duties owed by the Trust to third parties (i.e. bondholders and the Landlord).

(iv) "Breach of Fiduciary Duty" based upon the Trust's exercise of its lockbox and foreclosure rights.

(v) "Tortious Interference With Prospective Economic Relations" based upon the Trust's filing of the foreclosure action after the Borrower's failure to payoff the Loan on maturity, because the Borrower contends that the exercise of lender remedies interfered with the Borrower's negotiations with the Landlord under the Ground Lease.

(vi) "Fraudulent Inducement" because the Original Lender did not disclose that a rent re-set provision in the Ground Lease, which the Borrower had previously negotiated with the Landlord, would result in the Borrower's inability to repay or refinance the Loan.

## IV. LEGAL ARGUMENT

### A. The Borrower Has Not Stated A Claim for Clogging the Equity of Redemption.

There has not been a reported New York case finding a clog in the equitable right of redemption in more than 125 years. Nevertheless, notably absent from the Borrower's claim is the very predicate for the claim itself – an attempt to redeem. See Answer at ¶¶ 58-66. In order to redeem a mortgage and assert a claim that its attempt to do so has been violated, a borrower must first pay the entire outstanding debt or the payment "must be made or offered in good faith

4

before suit brought." See Hall v. Ditson, 5 Add. N. Cas. 198, 211-12 (N.Y. Cty. 1878). The Borrower does not allege that any payment or offer ever occurred (because none did) and as a result the Borrower's claim fails as a matter of law. See id. at 212 ("To enforce his equity, the plaintiff must do or offer to do equity, and that in an effective way.")

The Borrower's claim also fails because it is entirely premised upon hypothetical allegations of *what would have happened if another lender* chose to foreclose on security interests it held in the membership of a Borrower affiliate. See Answer at ¶ 63 (asserting that the Lender "could quickly foreclose out all of the Borrower's equity in the Property without any of the protections of a judicial mortgage foreclosure, effectively eliminating Borrower's equity of redemption"). There is no allegation that the Trust, who is the Plaintiff here, ever held the mezzanine loan or a pledge of any member interests in the Borrower such that it could be the proper subject of a claim for violating the Borrower's redemption rights. Paragraph 65 of the Counterclaims alleges that at some point in time the Borrower's affiliate purchased the Equity Pledge (as that term is defined in the Counterclaims) such that the threat being complained of is actually non-existent and has apparently not existed for some period of time. The Borrower's hypothetical allegations are not sufficient to show injury in fact, and the Borrower therefore lacks constitutional standing to assert this claim. See Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 85 (S.D.N.Y. 2014) ("The 'irreducible constitutional minimum of standing' under Article III of the Constitution includes the requirement that 'the plaintiff must have suffered an injury in fact . . . which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical.'") quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

To the extent that the Borrower is asserting a claim based upon amounts paid by its affiliate to some other lender at some point in time to acquire the Equity Pledge, those allegations do not

5
18634212-v6

support a claim for clogging the equity of redemption and the Borrower lacks standing to assert those claims against the Trust. See Rajamin, 757 F.3d at 86 (holding that the borrower lacked prudential standing to raise claims against trust where such claims were based upon the rights or legal interests of third parties). If any such claims existed, they would lie against some other lender, as the holder of the Equity Pledge, not the Trust. Further, even if the Borrower's hypothetical had actually occurred – i.e. if the holder of a security interest in the equity of the Borrower's affiliate foreclosed on those interests – it would not necessarily destroy the ***Borrower's*** equity of redemption, as the Borrower could still redeem the Mortgage at any point prior to the foreclosure sale.

Nonetheless, a claim for clogging the equity of redemption does not give rise to an independent cause of action for damages. Rather, it is an equitable doctrine that is used to scrutinize provisions that restrain redemption rights. See, e.g., Hall v. Ditson, 5 Abb. Cas. 198 (N.Y. Cty. 1878). Once again, there is nothing preventing the Borrower from redeeming the Mortgage by paying the Loan in full and a claim for violating the Borrower's redemption rights does not provide any basis for an award of damages. Accordingly, the Borrower's counterclaim for damages based on an alleged clogging the equity of redemption must be dismissed.

**B.    The Borrower's Counterclaim for "Failure to Mitigate Damages/Setoff/Laches" Should Be Dismissed.**

No claim for setoff of "amounts recovered since March 11, 2015 against the amount allegedly owed under the Loan Documents" exists because the amount the Trust is seeking to recover already accounts for these funds. Paragraph 44 of the Complaint, defines the amount of the "Debt" owed to the Trust to include the amounts owed "less certain amounts held in suspense, reserve or escrow accounts." Those amounts necessarily include any amounts recovered by the Trust since March 11, 2015.

6

The Borrower's assertion that amounts spent by the Borrower's affiliates should be setoff against amounts owed by the Borrower to the Trust fails, both because the Borrower's "clogging the equity" argument with respect to the mezzanine loan is invalid, and because setoff requires mutuality – the debts must be owed between the same parties, in the same capacity. See Westinghouse Credit Corp v. D'Urso, 278 F.3d 138, 149 (2nd Cir. 2002) (holding that there was no claim for setoff where there was no mutuality). Mutuality does not exist and is not alleged to exist between the Trust and the Borrower's affiliates. As such, there can be no claim for setoff based on the amounts alleged to have been paid by a Borrower affiliate to acquire the Equity Pledge.

To the extent the Borrower is attempting to assert a counterclaim for failure to mitigate damages, the "claim" must be dismissed because failure to mitigate damages "is not an affirmative defense to an action to foreclose a mortgage. . .and does not constitute a basis for a counterclaim." U.S. Bank Nat'l Assoc. v. McPherson, No. 30564/10, 951 N.Y.S.2d 84, 2012 WL 1521862 *5 (Queens Cty. April 24, 2012) unreported. Moreover, as the Borrower expressly acknowledged in the Loan Agreement

> [u]pon the occurrence and during the continuance of an Event of Default, ***all or any one or more of the rights, powers, privileges and other remedies available to Lender*** against Borrower under this Agreement or any of the other Loan Documents executed and delivered by, or applicable to, Borrower or at law or in equity ***may be exercised by Lender at any time and from time to time*** . . . . Any such actions taken by Lender shall be cumulative and concurrent and may be pursued independently, singularly, successively, together or otherwise, ***at such time and in such order as Lender may determine in its sole discretion*** . . . .

Complaint, Ex. B, Loan Agreement at § 8.2. (emphasis added). The argument that "the long delay in seeking foreclosure has contributed to the untimely and improper accumulation of significant amounts of default interest" is therefore belied by the express acknowledgment in the Loan

7

Agreement that the Trust is to be the sole arbiter in terms of the timing and order of the exercise of any of its remedies. Indeed, the suggestion that the Trust could have been compelled to file the foreclosure action or should have done so at some earlier point in time is directly contradicted by the Loan Documents and not supported by the governing New York law.

Finally, the Borrower does not have a viable claim (or defense) of laches because the foreclosure was brought within the six-year statute of limitations period. See McIntosh v. Federal Nat'l Mortgage Assoc., 15 CV 8073, 2016 WL 4083434 (S.D.N.Y. July 25, 2016) slip op. ("The doctrine of laches is not available in a foreclosure action brought within the period of limitations."); Schmidt's Wholesale, Inc. v. Miller & Lehman Constr., Inc., 173 A.D.2d 1004, 1005 (N.Y. App. Div. 3rd Dep't 1991) (same).[5] In sum, none of the Borrower's three theories of recovery in its Second Counterclaim state a claim upon which relief can be granted.

### C. The Borrower Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The Borrower has not alleged a single fact to support a claim for breach of the implied covenant of good faith and fair dealing. "The implied covenant of good faith and fair dealing bars a party from taking actions that so directly to impair the value of a contract for another party that it may be assumed that they are inconsistent with the intent of the parties." LJL 33rd St. Assocs., LLC v. Pitcairn Props. Inc., 725 F.3d 184, 195 (2nd Cir. 2013) (internal quotation marks and citation omitted); 19 Recordings Ltd. v. Sony Music Entertain., 165 F. Supp. 3d 156, 160-61 (S.D.N.Y. 2016).

---

[5] The statute of limitations for foreclosure is six years. See CPLR § 231(4). The Borrower's laches claim also fails because (i) the doctrine of laches is an equitable defense, not a claim and (ii) the Borrower has not alleged that it "changed its position or failed to take some action to its prejudice as a result of the alleged delay," which allegations are required to state a defense of laches. See Schmidt's Wholesale, 173 A.D.2d at 1005; Cognetta v. Valencia Devs., Inc. 8 A.D.3d 318, 319 (N.Y. App. Div. 2nd Dep't 2004) (stating that laches is an equitable defense).

18634212-v6

The Borrower has not identified any action taken by the Trust that was contrary to the Loan Documents. The Borrower's allegations instead focus on unsupported accusations regarding duties owed to investors in the Trust, the Trust's controlling bondholders and the Landlord under the Ground Lease. Even accepting these allegations as true, they are insufficient to establish a claim for breach of the implied covenant of good faith and fair dealing by the Trust with respect to the Borrower under the Loan Documents, and the Borrower lacks standing to assert any such claims on behalf of these third parties.[6] The implied covenant of good faith and fair dealing does not extend the Borrower's rights or the Trust's duties beyond what is contained in the Loan Documents. See LJL 33rd St. Assocs., 725 F.3d at 195-96 (noting that the implied covenant of good faith and fair dealing cannot create duties that are contrary to the terms of the agreement); 19 Recordings Ltd., 165 F. Supp. 3d at 160-61 (same). The Borrower's claim for breach of the implied covenant must also be dismissed.

### D. The Borrower's Claim for Breach of Fiduciary Duty Must Be Dismissed.

It is well-settled under New York law that the "legal relationship between a borrower and a bank is a contractual one of debtor and creditor and does not create a fiduciary relationship between the bank and its borrower or its guarantors." Bank Leumi Trust Co. v. Block 3102 Corp., 180 A.D.2d 588, 589 (N.Y. App. Div. 1st Dep't 1992); see also Aaron Ferrer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731 F.2d 112, 122 (2nd Cir. 1984) ("New York law is clear that the usual relationship of bank and customer is that of debtor and creditor."); Cruz v. TD Bank, N.A., 855 F. Supp. 2d 157, 175-76 (S.D.N.Y. 2012). This principle is not altered by the existence of a lockbox, and a fiduciary duty is not established or breached by a lender exercising rights in a lockbox. See

---

[6] See Rajamin, 757 F.3d at 86 (holding that borrower lacked prudential standing to raise claims against trust where such claims were based upon the rights or legal interests of third parties).

9

18634212-v6

Aaron Ferrer & Sons Ltd., 731 F.2d at 122 (stating that bank did not breach fiduciary duty by accepting funds in a lockbox). Because the Trust did not owe a fiduciary duty to the Borrower, the Borrower has not stated and cannot state a claim for breach of fiduciary duty.

> **E. The Borrower Has Not Stated a Claim for Tortious Interference With Prospective Economic Relations.**

The Borrower has not stated a claim for tortious interference.[7] The alleged "wrongful conduct" the Borrower complains of – the filing of this foreclosure – is expressly permitted by the Loan Documents. "[A]s a matter of law, exercising a right specifically contemplated by a contract cannot constitute tortious interference with prospective business relations." 1-10 Industry Assocs., LLC v. Trim Corp. of Am., Index No. 3641/01, 2001 WL 1263509 *2 unreported (N.Y. Kings Cty. June 20, 2001) partially reversed on other grounds. The Borrower admits that it did not repay the Loan upon maturity, see Answer at ¶ 38, and the Mortgage expressly states that, upon default, the Trust may institute foreclosure proceedings. See Complaint, Ex. C, Mortgage at § 7.1(b). As a result, the filing of the foreclosure action cannot be wrongful, as a matter of law.

The Borrower's claim also fails because there is no allegation that an actual contract with Landlord would have resulted but-for the foreclosure filing. Therefore, the Borrower has not stated and cannot state a claim for tortious interference with prospective business relations and its claim must be dismissed. See Arnon Ltd. v. Beierwaltes, 125 A.D.3d 453, 453-54 (N.Y. App. Div. 1st Dep't 2015) (stating that to state a claim for tortious interference with prospective economic relations, the Borrower must allege facts sufficient to establish (i) but-for the Trust's conduct, the prospective economic relations would have resulted in an actual contract and (ii) that the

---

[7] To state a claim for tortious interference with prospective economic relations, the Borrower must allege facts sufficient to establish (i) but-for the Trust's conduct, the prospective economic relations would have resulted in an actual contract and (ii) that the interference was "accomplished by wrongful means or with malicious intent." See Arnon Ltd. v. Beierwaltes, 125 A.D.3d 453, 453-54 (N.Y. App. Div. 1st Dep't 2015); Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 78-79 (S.D.N.Y. 1995).

interference was "accomplished by wrongful means or with malicious intent."); Riddell Sports Inc. v. Brooks, 872 F. Supp. 73, 78-79 (S.D.N.Y. 1995) (holding that the counterclaim for tortious interference with prospective business relations failed where counterplaintiffs did not allege facts sufficient to establish that a contract would have resulted but-for the counterdefendant's conduct). The Borrower's claim for tortious interference with prospective business relations must be dismissed.

### F. The Borrower Cannot State a Claim of Fraudulent Inducement.

The Borrower's claim of fraudulent inducement is defective for numerous independent reasons. First, the claim is barred by the applicable six (6) year statute of limitations. See N.Y. CPLR § 213(8); MFW Assocs., LLC v. Plausteiner, 15 Civ. 2513, 2017 WL 1057311 *7-8 (S.D.N.Y. March 16, 2017) slip op. The Borrower claims that it was fraudulently induced to enter the Loan in March of 2005 because the Original Lender, not the Trust, failed to disclose to the Borrower that a rent reset provision contained in the Ground Lease – an agreement between the Borrower and Landlord that pre-dates the Loan Documents by at least eight (8) years – would render it impossible for the Borrower to re-finance or repay the Loan. Any claim for fraudulent inducement with respect to the origination of the Loan was time-barred as of March 2011. See N.Y. CPLR § 213(8); MFW Assocs., 2017 WL 1057311 at *7-8.

The Borrower's fraudulent inducement claim is also defective because the Borrower cannot establish the necessary elements for such claim. To establish a claim for fraudulent inducement, Borrower must allege (1) that the Trust knowingly misrepresented a material fact; (2) the Trust intended to defraud the Borrower and induce the Borrower to act on the misrepresentation; (3) the Borrower reasonably relied upon the misrepresentation; and (4) the Borrower suffered damages as a result. See Camofi Master LDC v. College P'Ship, Inc., 452 F. Supp. 2d 462, 474 (S.D.N.Y.

2006); Kriegel v. Donelli, 11 Civ. 9160(ER), 2014 WL 2936000 *10-11 (June 30, 2014) unreported. The Borrower does not allege a duty to disclose, a material fact or reasonable reliance by the Borrower.

Putting aside the fact that the actions complained of were done by the Original Lender, not the Trust, where, as here, the alleged "misrepresentation" is one of omission, the Borrower must first establish that the Trust had a duty to disclose. See Sado v. Ellis, 882 F. Supp. 1401, 1405-06 (S.D.N.Y. 1995) (stating that where the fraudulent misrepresentation claim is based upon concealment, "the inquiry turns on whether there was a duty to disclose."); Kriegel, 2014 WL 2936000 *10 ("Where the claim is for fraud by omission, the plaintiff must prove additionally that the defendant had a duty to disclose the concealed fact.") (internal quotation marks and citation omitted). The Borrower did not allege that the Trust had a duty to disclose because no such duty exists on the part of a commercial lender.[8]

The Borrower's claim also fails because the alleged misrepresentation was not of a material fact. "To be considered material, misrepresentations must relate to the terms or conditions of the loan itself." Camofi, 452 F. Supp. 2d at 474; Thornack v. Kinderholl Corp., 749 F. Supp. 513, 518 (S.D.N.Y. 1990) (stating that to prevent enforcement of a note, the misrepresentations must concern the terms or conditions of the loan). Here, the omission relates to the pre-existing Ground Lease between the Borrower and Landlord, not the Loan Documents or the terms of the loan itself.

The Borrower's fraudulent inducement claim is further defective because Borrower did not allege justifiable reliance. And, even if the Borrower had alleged that it relied on the omission, its reliance could not be justified. The Borrower's assertion that the Trust had better knowledge than

---

[8] No fiduciary relationship between the Borrower and the Original Lender/the Trust exists that would give rise to a duty to disclose. See Sado, 882 F. Supp. At 1405-6 (holding that because there was no evidence of a fiduciary duty, there was no duty to disclose); Bombardier Capital Inc. v. Naske Air GMBH, 2003 WL 22137989 *3 (S.D.N.Y. Sept. 17, 2003) unreported (holding that lender had no duty to disclose).

the Borrower regarding the terms of the Borrower's own Ground Lease with Landlord and its effect on the Borrower's ability to refinance the Loan is absurd. The Ground Lease predated the Loan Documents by more than eight (8) years and was entered between the Borrower and Landlord. Indeed, in the Loan Documents, the Borrower expressly disavowed any reliance on the Original Lender and affirmatively represented that both the Borrower and the Original Lender were relying on the Borrower's managing member's "expertise and business plan and business plan in connection with the ownership and operation of the Property. The Borrower is not relying on [Original Lender's] expertise, business acumen or advice in connection with the Property." See Complaint, Ex. C, Mortgage at § 4.2. Similarly, in the Loan Agreement, the Borrower acknowledged that "with respect to the Loan, Borrower shall rely solely on its own judgment and advisors in entering into the Loan without relying in any manner on any statements, representations or recommendations of Lender . . . ." See Complaint, Ex. B, Loan Agreement at § 10.20. Finally, the Borrower waived any claim against the Trust, as an assignee of the Original Lender, noting in the Loan Agreement that

> [a]ny assignee of Lender's interest in and to this Agreement, the Note and the other Loan Documents ***shall take the same free and clear of all offsets, counterclaims or defenses which are unrelated to such documents which Borrower may otherwise have against any assignor of such documents***, and no such unrelated counterclaim or defense shall be interposed or asserted by Borrower in any action or proceedings brought by any such assignee upon such documents and ***any such right to interpose or assert any such unrelated offset, counterclaim or defense in any such action or proceeding is hereby expressly waived by Borrower***.

Complaint, Ex. B, Loan Agreement at § 10.15. (emphasis added). The Borrower's specific disclaimers and express waiver bar any allegation that the Borrower justifiably relied upon the Original Lender or that any such claim against the Original Lender could properly be asserted

13

against the Trust in this litigation. See Warner Theatre Assocs. L.P. v. Met. Life Ins. Co., 97 CIV. 4914(SS), 1997 WL 685334 *3 (S.D.N.Y. Nov. 4, 1997) unreported.[9]

The Borrower's claim for fraudulent inducement must be dismissed.

## V. CONCLUSION

WHEREFORE, based upon the foregoing and the entire record before the Court, the Trust respectfully requests that the Court enter an order dismissing the Counterclaims with prejudice and granting the Trust such other and further relief as is just and appropriate under the circumstances of this case.

| | |
|---|---|
| Dated: August 18, 2017<br>New York, New York | Respectfully submitted,<br><br>VENABLE LLP<br><br>Rishi Kapoor<br>Rockefeller Center<br>1270 Avenue of the Americas, 24th Floor<br>New York, New York 10020<br>Telephone: (212) 307-5500<br><br>-and-<br><br>By: */s/ Heather Deans Foley*<br>Gregory A. Cross (admitted *pro hac vice*)<br>Heather Deans Foley (admitted *pro hac vice*)<br>Venable LLP<br>750 East Pratt Street, Suite 900<br>Baltimore, Maryland 21202<br>Telephone: (410) 244-7400<br><br>*Counsel for Plaintiff* |

---

[9] Any reliance by Borrower would also be unjustified as a matter of law, because Borrower had knowledge of all of the terms of the Loan Documents and the Ground Lease and could have discovered any claimed omission through ordinary diligence. See Sado, 882 F. Supp. At 1407 ("Under New York law, a party cannot claim reliance on a misrepresentation where he could have discovered the truth with ordinary diligence."); Crotona 1976 Corp. v. Vidu Bros. Corp., 925 F. Supp. 2d 298, 308-9 (stating that a "party must exercise diligence in determining whether the representations at issue were false").

14

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 18, 2017, I served a copy of the foregoing Memorandum of Law in Support of Plaintiff's Motion to Dismiss Counterclaims, *With Prejudice* on the following via electronic delivery and first class mail, postage prepaid:

> Raymond Nicola Hannigan
> Herrick, Feinstein LLP
> Two Park Avenue
> New York, New York 10016
> *Counsel for Defendants 390 Park Avenue Associates, LLC*

                                                             */s/ Heather Deans Foley*
                                                             Heather Deans Foley