---------------------------------------------------------------x

WELLS FARGO BANK, N.A., AS TRUSTEE
FOR THE REGISTERED HOLDERS OF
CREDIT SUISSE FIRST BOSTON MORTGAGE
SECURITIES CORP., COMMERCIAL
MORTGAGE PASS-THROUGH
CERTIFICATES, SERIES 2005-C2, BY AND
THROUGH ITS SPECIAL SERVICER,
CWCAPITAL ASSET MANAGEMENT LLC,

      Plaintiff,

      v.

390 PARK AVENUE ASSOCIATES, LLC; et al.

      Defendants.

---------------------------------------------------------------x

Case No.: 16-cv-09112 (LGS)

# REPLY IN SUPPORT OF PLAINTIFF'S
# MOTION TO DISMISS COUNTERCLAIMS, *WITH PREJUDICE*

Gregory A. Cross (admitted *pro hac vice*)
Heather Deans Foley (admitted *pro hac vice*)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 244-7400

-and-

Rishi Kapoor
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

                                                                                                      **PAGE**

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    LEGAL ARGUMENT.................................................................................................1

         A.      The Borrower Has Not Stated A Claim for Clogging the Equity of Redemption.................................................................................................1

         B.      The Borrower's Counterclaim for "Failure to Mitigate Damages/Setoff/Laches" Should Be Dismissed ......................................................3

         C.      The Borrower Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing...............................................5

         D.      The Borrower's Claim for Breach of Fiduciary Duty Must Be Dismissed .................................................................................................5

         E.      The Borrower Has Not Stated a Claim for Tortious Interference With Prospective Economic Relations.................................................6

         F.      The Borrower Cannot State a Claim of Fraudulent Inducement ..........................8

III.   CONCLUSION..........................................................................................................10

# TABLE OF AUTHORITIES

**Cases** Page(s)

19 Recordings Ltd. v. Sony Music Entertain.,
   165 F. Supp. 3d 156 (S.D.N.Y. 2016)..................................................................5

Amaranth v. JPMorgan Chase & Co.,
   71 A.D.3d 40 (N.Y. App. Div. 1st Dep't 2009).....................................................7

Arnon Ltd. v. Beierwaltes,
   125 A.D.3d 453 (N.Y. App. Div. 1st Dep't 2015) .................................................6

Bombardier Capital Inc. v. Naske Air GMBH,
   2003 WL 22137989 (S.D.N.Y. Sept. 17, 2003)...................................................10

Burba v. Rochester Gas & Elec. Corp.,
   139 A.D.2d 939 (N.Y. App. Div. 4th Dep't 1988) .................................................7

Burns Jackson Miller Summit & Spitzer v. Lindner,
   59 N.Y.2d 314 (N.Y. 1983) ...................................................................................8

Camofi Master LDC v. College P'Ship, Inc.,
   452 F. Supp. 2d 462 (S.D.N.Y. 2006).................................................................10

Chase Equip. Leasing Inc. v. Architectural Air, L.L.C.,
   84 A.D.3d 439 (N.Y. App. Div. 1st Dep't 2011)...................................................5

Dayan v. York,
   51 A.D.3d 964 (N.Y. App. Div. 2nd Dep't 2008) ..................................................4

First Ill. Nat'l Bank v. Hans,
   493 N.E.2d 1171 (Ill. App. 1986) ..........................................................................3

Hall v. Ditson,
   5 Add. N. Cas. 198 (N.Y. Cty. 1878).....................................................................2

Henry v. Davis & Clark,
   2 N.Y. Ch. Ann. 213 (N.Y. Chancery Ct. 1823)....................................................3

Herrick Co., Inc. v. Vetta Sports, Inc.,
   No. 94 Civ. 0905, 1996 WL 434571 (S.D.N.Y. Aug. 2, 1996) ..............................8

Horn v. Keteltas,
   46 N.Y. 605 (N.Y. 1871) .......................................................................................3

Jakobsen Shipyard, Inc. v. Aetna Cas. & Sur. Co.,
   775 F. Supp. 606 (S.D.N.Y. 1991) ........................................................................9

Julian J. Studley, Inc. v. Coach, Inc.,
 3 A.D.3d 358 (N.Y. App. Div. 1st Dep't 2004)...........................................................................7

Kahn v. Salomon Bros. Inc.,
 813 F. Supp. 191 (E.D.N.Y. 1993) ............................................................................................8

Liberthal v. Agency Ins. Brokers, Inc.,
 216 A.D.2d 816 (N.Y. App. Div. 3rd Dep't 1995) ....................................................................9

Mandelblatt v. Devon Stores, Inc.,
 132 A.D.2d 162 (N.Y. App. Div. 1st Dep't 1987).....................................................................7

Manufacturer's Hanover Trust Co. v. Yanakas,
 7 F.3d 310 (2nd Cir. 1993)......................................................................................................5, 6

Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia,
 23 F. Supp. 2d 439 (S.D.N.Y. 1998).........................................................................................9

MFW Assocs., LLC v. Plausteiner,
 15 Civ. 2513, 2017 WL 1057311 (S.D.N.Y. March 16, 2017) .................................................8

Odell v. Montross,
 68 N.Y. 499 (N.Y. 1877) ...........................................................................................................3

Peugh v. Davis,
 96 U.S. 332 (1877).....................................................................................................................2

PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,
 818 F.2d 266 (2nd Cir. 1987)....................................................................................................7

Roswell Capital P's LLC v. Alternative Construction Technologies,
 638 F. Supp. 2d 360 (S.D.N.Y. 2009).......................................................................................6

Sado v. Ellis,
 882 F. Supp. 1401 (S.D.N.Y. 1995)..........................................................................................9

Statler v. Dell, Inc.,
 841 F. Supp. 2d 642 (E.D.N.Y. 2012) ......................................................................................9

Westinghouse Credit Corp v. D'Urso,
 278 F.3d 138 (2nd Cir. 2002)....................................................................................................3

Yagamo Acquisitions, L.L.C. v. Baco Dev. 102 St., Inc.,
 278 A.D.2d 134 (N.Y. App. Div. 1st Dep't 2000)....................................................................4

Zorbas v. U.S. Trust Co., N.A.,
 48 F. Supp. 3d 464 (E.D.N.Y. 2014) ........................................................................................6

**Other Authorities**

CPLR § 213(8) ............................................................................................................. 8

Plaintiff Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-C2, by and through its Special Servicer, CWCapital Asset Management LLC (the "Trust"), respectfully submits this reply (the "Reply") in support of Plaintiff's Motion to Dismiss Counterclaims, *With Prejudice* (together with the Memorandum of Law in Support of Plaintiff's Motion to Dismiss Counterclaims, *With Prejudice*, the "Motion").[1]

## I. PRELIMINARY STATEMENT

Faced with its admitted maturity default and impending foreclosure, the Borrower has asserted six fundamentally defective counterclaims in an attempt to delay an inevitable foreclosure. The counterclaims are not only meritless, the relief requested by the Borrower goes well-beyond the relief available for such claims. Having enjoyed the benefits of the $110 million loan throughout the full term of the loan, the Borrower is now asking the Court to invalidate the Mortgage and award significant damages based upon amounts paid by the Borrower's affiliate to an unrelated mezzanine lender. The counterclaims should be summarily dismissed.

## II. LEGAL ARGUMENT[2]

### A. The Borrower Has Not Stated A Claim for Clogging the Equity of Redemption.

The Borrower vastly overstates both the concept of "clogging the equity" and the relief available in connection with such a claim. A clog in the equitable right of redemption may be found where a loan agreement contains a provision that eliminates the Borrower's right to redeem the property by paying the full amount due on the loan after a default occurs and before a

---

[1] Capitalized terms used, but not defined herein shall be defined as set forth in the Memorandum of Law in Support of Plaintiff's Motion to Dismiss Counterclaims, *With Prejudice* (the "Opposition"). Docket No. 64.

[2] The Borrower attempts to argue that the Trust has played procedural games by not moving to strike the Borrower's affirmative defenses at the same time that the Trust filed its motion to dismiss. Although the affirmative defenses suffer from the same maladies, the Trust has no obligation to move to strike the affirmative defenses.

1

foreclosure sale of the property. See Peugh v. Davis, 96 U.S. 332, 335 (1877). No such provision exists here. The Borrower instead alleges that the equity of redemption was clogged as a result of a mezzanine loan made to a different entity that was secured by the equity interests in the Borrower. This allegation is demonstrably false. The mezzanine loan was not secured by the Borrower's equity, it was secured by equity interests in the Borrower's *affiliate*, 390 Park Avenue Mezzanine LLC (the "Mezz Borrower"). Even if the mezzanine lender (the "Mezz Lender") were to foreclose on these interests, this would not affect the *Borrower's* ability to redeem the Property by paying the amounts owed on the subject Loan.[3] Further, the mezzanine loan is not held by the Trust and was never held by the Trust.[4] The Trust had no ability to foreclose on the equity interest in the Mezz Borrower, and the Borrower's right to redeem was not impaired by the Loan Documents.

Nevertheless, this Borrower has made no effort to redeem the Property – a result that the Trust would welcome – and has no intention of redeeming the Property. This fact is fatal to the Borrower's claim. See Hall v. Ditson, 5 Add. N. Cas. 198, 213 (N.Y. Cty. 1878) (stating that the borrower's failure to tender redemption amount prior to bringing suit barred redemption claim). Instead, the Borrower is asking the Court to invalidate the Mortgage and award damages for amounts paid by the Mezz Borrower to the Mezz Lender – relief that goes far beyond the remedy that is available for a clogging claim. The well-established remedy for a clog of the equity of redemption is to strike the offending provision so that the Borrower can redeem the Property by paying the full amount of the outstanding indebtedness. See Peugh, 96 U.S. at 337 (holding that deed that purported to be an absolute conveyance was actually a mortgage and the borrower

---

[3] The Borrower's allegations regarding the cross-collateralization of the Loan and the mezzanine loan, as well as the provision regarding the principal balances, interest rate and payment priority of the loans simply have no impact on the Borrower's right to redeem the Property after a default under the subject Loan Documents and are therefore not relevant to a claim for clogging the equity of redemption.

[4] The Borrower acknowledged that Column Financial, Inc. originated the mezzanine loan, but the counterclaim is devoid of any allegation that the Trust ever held the mezzanine loan.

retained the right to redeem the property from the mortgage); Odell v. Montross, 68 N.Y. 499, 507 (N.Y. 1877) (same); Horn v. Keteltas, 46 N.Y. 605, 611 (N.Y. 1871) (same); Henry v. Davis & Clark, 2 N.Y. Ch. Ann. 213 (N.Y. Chancery Ct. 1823) (same); see also First Ill. Nat'l Bank v. Hans, 493 N.E.2d 1171, 1174 (Ill. App. 1986) (holding that the *provision* of mortgage that purported to destroy the borrower's right to redeem was null and void). The Borrower has not stated a claim for clogging the equity of redemption, and its counterclaim should be dismissed.

### B. The Borrower's Counterclaim for "Failure to Mitigate Damages/Setoff/Laches" Should Be Dismissed.

The Borrower does not have a claim for setoff of amounts paid for the "Equity Pledge" against the Borrower's Loan Debt. As established above, the mezzanine loan is not a clog on the equity of redemption and, even if it were, the sole remedy available to the Borrower is to allow the Borrower to redeem the Property. It does not provide a basis for a claim of damages.

In addition, there is no mutuality. On the one hand there is the debt owed by the Borrower to the Trust. On the other hand there is an (alleged) debt owed by an unrelated Mezz Lender to the Mezz Borrower. The Borrower and Mezz Borrower are not the same party but, even if they could be considered to be,[5] the Trust and the Mezz Lender could not be considered to be the same party. Because the debts are not owed between the same parties, the Borrower cannot state a claim for setoff. See Westinghouse Credit Corp v. D'Urso, 278 F.3d 138, 149 (2nd Cir. 2002) (holding that there was no claim for setoff where there was no mutuality).

The absurdity of the Borrower's setoff claim is highlighted by considering the logical extension of its argument. Under the Borrower's theory, any amounts paid by a mezzanine borrower to a mezzanine lender throughout the life of a mezzanine loan could be setoff against the

---

[5] Notably, the Borrower has not cited a single case supporting its claim that the separate borrower entities should be considered to be the same party for purposes of a setoff claim.

3

amounts owed to a separate and distinct senior lender.  This argument would eviscerate the use of the mezzanine financing structure in commercial real estate.

The Borrower's argument that the Trust should be denied default interest based upon an "undue delay" in bringing the foreclosure action under theories of failure to mitigate damages or laches similarly lacks any support in law or fact.  The Borrower defaulted under the Loan Documents by failing to repay the Loan upon its maturity of March 11, 2015.  See Answer at ¶¶ 38.  The Trust commenced this Action on November 11, 2016 – less than two years after the Borrower's default.  In each of the authorities relied upon by the Borrower, to the extent that a lender was denied recovery of default interest, the "undue delay" was (i) a period of at least 4.5 years and, in most of the cited cases, was a delay of 7+ years and (ii) occurred *after* the foreclosure complaint was filed, as a result of the lender's failure to prosecute the action.  See Dayan v. York, 51 A.D.3d 964, 965 (N.Y. App. Div. 2nd Dep't 2008) (denying interest and penalties that accrued after judgment was entered as a result of the lender's seven year delay in completing the foreclosure); Yagamo Acquisitions, L.L.C. v. Baco Dev. 102 St., Inc., 278 A.D.2d 134 (N.Y. App. Div. 1st Dep't 2000) (limiting award of default interest to a one-year period based upon lender's seven delay in completing foreclosure after obtaining summary judgment).  There was no "undue delay" in bringing the foreclosure, and the Borrower has not stated a claim for failure to mitigate damages or laches.[6]

---

[6] Perversely, the Borrower argues, on the one hand, that the Trust should be penalized for a perceived delay in filing; yet, on the other hand, that the filing was premature in that it is alleged to have interfered with negotiations with the landlord under the Ground Lease.

### C. The Borrower Has Not Stated a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing.

The Borrower still has not alleged a single action taken by the Trust against *the Borrower* to support its claim for breach of the complied covenant of good faith and fair dealing. Each of the alleged "bad faith" acts by the Trust are against the Trust's bondholders, the Trust's Directing Certificateholder, or the Property's landlord – not the Borrower. See Answer at ¶¶ 98-100. This foreclosure action is the only action taken by the Trust against the Borrower. However, the Trust's exercise of its contractual remedy of foreclosure following an admitted Borrower default cannot provide the basis for a claim for breach of the implied covenant. See Chase Equip. Leasing Inc. v. Architectural Air, L.L.C., 84 A.D.3d 439 (N.Y. App. Div. 1st Dep't 2011) (holding that "the duty of good faith does not imply obligations inconsistent with contractual provisions."); 19 Recordings Ltd. v. Sony Music Entertain., 165 F. Supp. 3d 156, 160-61 (S.D.N.Y. 2016) (holding that plaintiff did not state a claim for breach of the implied covenant of good faith and fair dealing where "the allegations show only that [the defendant] was acting in its own self-interest consistent with its rights under the contract.") (citation omitted).

### D. The Borrower's Claim for Breach of Fiduciary Duty Must Be Dismissed.

The Borrower has not alleged any facts that would give rise to a fiduciary relationship between the Trust and the Borrower and therefore has not stated a claim for breach of fiduciary duty. The Borrower's claim is predicated upon its theory that the Trust exercised unusual control over the Borrower as a result of (i) the Trust's valid exercise of its contractual lockbox rights after the Borrower's admitted maturity default and (ii) the Borrower's inability to receive financing from another lender as a result of the rent re-set contained in the Ground Lease (an agreement negotiated and agreed to by the Borrower and the landlord that pre-dates the Loan Documents by at least eight (8) years). These facts do not establish a fiduciary duty. See Manufacturer's Hanover

5

Trust Co. v. Yanakas, 7 F.3d 310, 318 (2nd Cir. 1993) (holding that the borrower did not state a claim for breach of fiduciary duty based upon lender's refusal to provide additional financing even though the borrower could not obtain financing from other sources); Roswell Capital P's LLC v. Alternative Construction Technologies, 638 F. Supp. 2d 360, 368-69 (S.D.N.Y. 2009) (finding that the lender had no fiduciary duty to the borrower despite evidence that the lender received ownership of shares in the borrower, appointed two members to the board of directors and hampered the borrower's ability to obtain additional funding because such actions were "simply the [lender's] exercise of contractual rights achieved through a bargained conducted at arms-length."); Zorbas v. U.S. Trust Co., N.A., 48 F. Supp. 3d 464, 481-82 (E.D.N.Y. 2014) (finding that the lender did not owe a fiduciary duty where the control exerted by the lender over an account was authorized by the contractual security agreement and there was no showing of an "extra-contractual source of dominance or that [the lender] enjoyed an *unusual* advantage resulting from its security interest" in the account). The Trust's exercise of its contractual rights in the lockbox and its refusal to provide additional financing to the Borrower did not create a fiduciary duty and the Borrower's claim therefore fails.

> **E.     The Borrower Has Not Stated a Claim for Tortious Interference With Prospective Economic Relations.**

The Borrower has no legal authority supporting its novel argument that the Trust's exercise of its contractual right to foreclose upon the Borrower's admitted maturity default constitutes tortious interference. See Opposition at p. 18.[7] See Arnon Ltd. v. Beierwaltes, 125 A.D.3d 453 (N.Y. App. Div. 1st Dep't 2015) (stating that a claim for tortious interference based upon a civil

---

[7] The Borrower's argument that the Trust confuses an "or" for an "and" in the wrongful means or malicious intent element of tortious interference is made up whole-cloth. In reciting the elements of a tortious interference claims, (i.e. that the elements are (i) but-for the Trust's interference, an actual contract would have resulted and (ii) that the interference was accomplished by wrongful means **or** malicious intent) the Trust used an "or" and not an "and". See Motion at pp. 10, n. 7 and 11.

6

suit must show that the lawsuit was (i) frivolous and (ii) directed at the party with whom the claimant is seeking to have a business relationship) slip op.[8]

The Borrower's claim also fails because the Borrower has not alleged facts sufficient to show "interference." The Borrower alleges that it was in negotiations with the landlord "trying to get a new or amended Ground Lease with the Landlord" to resolve the rent re-set contained in the Ground Lease, but that these negotiations were unsuccessful as a result of the foreclosure filing. See Opposition at p. 20. Even if the Borrower had alleged that a new or amended Ground Lease would have resulted but-for the foreclosure filing, the Borrower's claim would still fail because the Borrower's contract with the landlord was not terminated and, in fact, remains unchanged. See PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc., 818 F.2d 266, 270 (2nd Cir. 1987) (finding that plaintiff failed to establish a claim for tortious interference with prospective economic advantage where the underlying contract where the contract was not terminated and the relationship remained unchanged) (abrogated on other grounds).[9] "New York law does not

---

[8] The Borrower's claim for tortious interference is odd, because in the very same sentence, the Borrower argues that the Trust acted wrongfully by filing the foreclosure too soon, and thereby impacting the Borrower's negotiations with the landlord and also too slow, thereby allowing the accumulation of default interest. See Answer at ¶ 110.

[9] The Borrower's claim also fails because the Borrower has not alleged facts sufficient to show that a new or amended contract would have been entered but-for the Trust's filing of the foreclosure. The cases relied upon by the Borrower to support its claim that mere negotiations are sufficient do not support the Borrower's position. The Borrower cites Amaranth v. JPMorgan Chase & Co. to support the Borrower's statement that its allegations were sufficient, but in Amaranth (i) an actual deal was reached and (ii) the Court was actually determining that the claim sounded in tortious interference rather than defamation. 71 A.D.3d 40, 48 (N.Y. App. Div. 1st Dep't 2009).

In Julian J. Studley, Inc. v. Coach, Inc., the court was analyzing a terminated brokerage agreement to determine the broker's right to a commission for a lease entered with a tenant with whom the broker had negotiated a lease deal with prior to termination. 3 A.D.3d 358 (N.Y. App. Div. 1st Dep't 2004).

The Borrower quoted the dissenting opinion in Burba v. Rochester Gas & Elec. Corp., 139 A.D.2d 939 (N.Y. App. Div. 4th Dep't 1988). The court's actual holding was the plaintiff did not state a claim for tortious interference where the defendant was exercising its contractual rights.

In Mandelblatt v. Devon Stores, Inc., the court's finding that the counterclaimants had adequately pled a claim for tortious interference was based upon the allegation of a fiduciary relationship. 132 A.D.2d 162, 168-69 (N.Y. App. Div. 1st Dep't 1987). There is no such relationship here.

7

recognize a cause of action for tortious interference with business relations when the only effect of the interferer's conduct was to make the performance of the contract more expensive or burdensome." See Herrick Co., Inc. v. Vetta Sports, Inc., No. 94 Civ. 0905, 1996 WL 434571 *4 (S.D.N.Y. Aug. 2, 1996) unreported; Kahn v. Salomon Bros. Inc., 813 F. Supp. 191, 194 (E.D.N.Y. 1993) ("No New York case has recognized a cause of action for intentional interference with business relations where the defendant has not provoked a contract breach but has 'merely caused plaintiff's performance of its contracts to be more expensive or burdensome.'") quoting Burns Jackson Miller Summit & Spitzer v. Lindner, 59 N.Y.2d 314 (N.Y. 1983).

The Borrower's claim for tortious interference suffers from numerous independent defects, each of which mandate dismissal of its claim.

### F. The Borrower Cannot State a Claim of Fraudulent Inducement.

The Borrower's claim for fraudulent inducement rests entirely upon its allegations that the Original Lender failed to save the Borrower from a bad deal that the Borrower negotiated with the landlord *eight (8) years before the Loan was originated*.[10] Under the Borrower's theory, the Original Lender, who had nothing to do with the Ground Lease, knew that the terms of the Loan coupled with the rent re-set contained in the pre-existing Ground Lease would render it impossible for the Borrower to repay or refinance the Loan upon maturity. See Answer at ¶ 116. This is not only ridiculous, it is barred by the six year statute of limitations. All of the facts alleged were known by the Borrower when the instant Loan was originated in March of 2005. See N.Y. CPLR

---

[10] In fact, in Section 4.1.5 of the Loan Agreement, the Borrower represented and warranted that it was "not a party to any agreement or instrument or subject to any restriction which might materially and adversely affect Borrower or the Property, or Borrower's business, properties or assets, operations or condition, financial or otherwise." To the extent that the Borrower was unable to payoff the Loan upon maturity as a result of the terms of the existing Ground Lease, the Borrower's representation was false is an additional default under the Loan Documents. See loan Agreement at 8.1(v).

8

§ 213(8); MFW Assocs., LLC v. Plausteiner, 15 Civ. 2513, 2017 WL 1057311 *7-8 (S.D.N.Y. March 16, 2017) slip op.

The Borrower also fails to allege facts sufficient to support a claim for equitable tolling. In order to establish equitable tolling based upon fraudulent concealment, the Borrower is required to show (i) that the Original Lender/Trust concealed the existence of the claim; (ii) that the Borrower remained ignorant of the claim until some point within six years of asserting it; and (iii) that the Borrower's "ignorance was not attributable to a lack of diligence" on the Borrower's part. See Meridien Int'l Bank Ltd. v. Gov't of the Republic of Liberia, 23 F. Supp. 2d 439, 446 (S.D.N.Y. 1998); Statler v. Dell, Inc., 841 F. Supp. 2d 642,647 (E.D.N.Y. 2012) ("[A] Plaintiff seeking an equitable toll of the statute of limitations must show that Defendant's action rendered Plaintiff unable, despite his due diligence, to commence a timely action.")

There was no concealment here. The terms complained of were set forth in the Loan Documents and Ground Lease, documents that were executed by the Borrower and that the Borrower is presumed to have read and understood. See Jakobsen Shipyard, Inc. v. Aetna Cas. & Sur. Co., 775 F. Supp. 606, 613 (S.D.N.Y. 1991) ("It is axiomatic that the signer of a contract is presumed to have read and understood all he signs regardless of whether he actually examined the document"); Liberthal v. Agency Ins. Brokers, Inc., 216 A.D.2d 816 (N.Y. App. Div. 3rd Dep't 1995) (holding that because an insured was charged with knowledge of the terms of its policy, there could be no claim for fraudulent inducement to support equitable tolling of the applicable statute of limitations).

Moreover, the Borrower's fraudulent inducement claim is substantively defective. Not only did the Borrower fail to allege a duty to disclose, neither the Original Lender nor the Trust had any duty to disclose. See Sado v. Ellis, 882 F. Supp. 1401, 1405-06 (S.D.N.Y. 1995), (holding

that where a fraudulent inducement claim is based upon an omission, there must be a duty to disclose and because there was no evidence of a fiduciary duty, there was no duty to disclose); Bombardier Capital Inc. v. Naske Air GMBH, 2003 WL 22137989 *3 (S.D.N.Y. Sept. 17, 2003) unreported (holding that lender had no duty to disclose).

Furthermore, the claimed "material fact" upon which the fraudulent inducement claim relies – i.e. that the Borrower would be unable to repay or refinance the Loan on maturity[11] – is not a material fact because it does not relate to the terms or conditions of the Loan itself. Because the alleged misrepresentation is not of a material fact, the Borrower cannot assert a claim for fraudulent inducement. See Camofi Master LDC v. College P'Ship, Inc., 452 F. Supp. 2d 462, 474 (S.D.N.Y. 2006).

## III. CONCLUSION

WHEREFORE, based upon the foregoing and the entire record before the Court, the Trust respectfully requests that the Court enter an order dismissing the Counterclaims with prejudice and granting the Trust such other and further relief as is just and appropriate under the circumstances of this case.

Dated: October 6, 2017
      New York, New York

Respectfully submitted,

VENABLE LLP

Rishi Kapoor
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500
 -and-

By: /s/ Gregory A. Cross
    Gregory A. Cross (admitted pro hac vice)
    Heather Deans Foley (admitted pro hac vice)
    Venable LLP
    750 East Pratt Street, Suite 900

---

[11] See Answer at ¶ 117.

Baltimore, Maryland 21202
Telephone: (410) 244-7400

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

       I hereby certify that on October 6, 2017, I served a copy of the foregoing Reply in Support of Plaintiff's Motion to Dismiss Counterclaims, *With Prejudice* on the following via electronic delivery and first class mail, postage prepaid:

       Raymond Nicola Hannigan
       Herrick, Feinstein LLP
       Two Park Avenue
       New York, New York 10016
       *Counsel for Defendants 390 Park Avenue Associates, LLC*

       Janice Mac Avoy
       Jesse Ryan Loffler
       Fried, Frank, Harris, Shriver & Jacobson LLP
       One New York Plaza
       New York, New York 10004-1980
       *Counsel for Defendant 390 Park Avenue Associates, LLC*

                                                  /s/ Gregory A. Cross
                                                  Gregory A. Cross