**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
WELLS FARGO BANK, N.A., AS TRUSTEE     :
FOR THE REGISTERED HOLDERS OF     :
CREDIT SUISSE FIRST BOSTON MORTGAGE     :
SECURITIES CORP., COMMERCIAL     :
MORTGAGE PASS-THROUGH     :
CERTIFICATES, SERIES 2005-C2, BY AND     :
THROUGH ITS SPECIAL SERVICER,     :
CWCAPITAL ASSET MANAGEMENT LLC,     :    Case No.: 16-cv-09112 (LGS)
    :
       Plaintiff,     :
    :
       v.     :
    :
390 PARK AVENUE ASSOCIATES, LLC; et al.     :
    :
       Defendants.     :
    :
----------------------------------------------------------x


**MEMORANDUM OF LAW IN OPPOSITION TO 390 PARK AVENUE**
**ASSOCIATES, LLC'S MOTION FOR SUMMARY JUDGMENT AND**
**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**
**AND MOTION TO APPOINT A REFEREE**

Gregory A. Cross (admitted *pro hac vice*)
Heather Deans Foley (admitted *pro hac vice*)
Venable LLP
750 East Pratt Street, Suite 900
Baltimore, Maryland 21202
Telephone: (410) 244-7400

-and-

Rishi Kapoor
Rockefeller Center
1270 Avenue of the Americas, 24th Floor
New York, New York 10020
Telephone: (212) 307-5500


*Attorneys for Plaintiff*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS .................................................................................2

LEGAL ARGUMENT......................................................................................3

     I.      DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT
            SHOULD BE DENIED ....................................................................3

            A.      Wells Fargo is an "Active" Trustee ...........................................3

            B.      Neither the Role of the Special Servicer Nor the Approval/Consent Rights
                   of the Directing Certificateholder Transforms Wells Fargo Into a "Naked"
                   Trustee.............................................................................8

     II.     PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT ...............................12

            A.      Plaintiff Has Established a Prima Facie Case for Summary Judgment .....13

            B.      There Are No Material Disputes of Fact Regarding Plaintiff's Standing..16

     III.    THE COURT SHOULD AWARD PLAINTIFF'S FEES, COSTS, AND
             EXPENSES AND APPOINT A REFEREE ........................................20

CONCLUSION.............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                              **Page(s)**

<u>Anderson v. Liberty Lobby, Inc.</u>,
    477 U.S. 242 (1986)............................................................................................12, 16

<u>Americold Realty Tr. v. Conagra Foods, Inc.</u>,
    136 S. Ct. 1012 (2016)......................................................................................... *passim*

<u>B & H Fla. Notes LLC v. Ashkenazi</u>,
    149 A.D.3d 401 (1st Dept. 2017)..............................................................................16

<u>BAC Home Loan Serv. v. McFerren</u>,
    6 N.E.3d 51 (Ohio Ct. App. 2013)............................................................................17

<u>Bank of Am., N.A. v. 3301 Atlantic, LLC</u>,
    No. 10-CV-5204(FB), 2012 WL 2529196 (E.D.N.Y. June 29, 2012)..................7, 8

<u>Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed
    Certificates Series 2006-24</u>,
    866 F.3d 351 (5th Cir. 2017) ....................................................................................11

<u>Caren v. Collins</u>,
    689 F. App'x 75 (2d Cir. 2017) ..................................................................................9

<u>CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC</u>,
    610 F.3d 497 (7th Cir. 2010) ....................................................................................10

<u>Delia v. GMAC Mortg. Corp.</u>,
    161 So. 3d 554 (Fla. Dist. Ct. App. 2014) ...............................................................17

<u>Deutsche Bank Nat. Tr. Co. v. Johnston</u>,
    369 P.3d 1046 (N.M. 2016) ......................................................................................17

<u>DHI Holdings, LP v. Mortgageit, Inc.</u>,
    No. CV H-17-0960, 2017 WL 3116152 (S.D. Tex. July 21, 2017)........................10

<u>Fannie Mae v. Trahey</u>,
    No. 12CA010209, 2013 WL 3534475 (Ohio Ct. App. July 15, 2014)....................17

<u>In re Feinberg</u>,
    442 B.R. 215 (Bankr. S.D.N.Y. 2010) .....................................................................14

Halley v. Deutsche Bank National Trust Co., as Trustee for Morgan Stanley Abs
   Capital I Inc., Trust 2004-he3, Mortgage Pass Through Certificates, Series
   2004-he3, et al.,
   No. CV H-15-1174, 2016 WL 3855872 (S.D. Tex. July 15, 2016)...........................................7

IRB-Brasil Resseguros S.A. v. Portobello Int'l Ltd. IRB-Brasil Resseguros S.A. v.
   Portobello Int'l Ltd.,
   84 A.D.3d 637 (1st Dept. 2011)............................................................................................18

JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips S. Beach, LLC,
   No. 10-20636-CIV, 2010 WL 4317000 (S.D. Fla. Oct. 22, 2010) .........................................10

LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings,
   237 F. Supp. 2d 618 (D. Md. 2002).......................................................................................8

LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.,
   180 F. Supp. 2d 465 (S.D.N.Y. 2001)...........................................................................4, 7, 8

LMP Ninth St. Real Estate, LLC v. U.S. Bank Nat'l Ass'n,
   No. 8:16-CV-2463-T-33AEP, 2016 WL 6068302 (M.D. Fla. Oct. 17, 2016) ........................7

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
   475 U.S. 574 (1986)...........................................................................................................12

Nationstar Mortg., LLC v. Davidson,
   116 A.D.3d 1294 (3d Dept. 2014) .......................................................................................16

Navarro Sav. Ass'n v. Lee,
   446 U.S. 458 (1980).................................................................................................. passim

OneWest Bank, N.A. v. Rosado,
   No. 14 Civ. 9917 (LGS), 2016 WL 3198305 (S.D.N.Y. June 7, 2016) slip op.....................13

PennyMac Corp. v. Chavez,
   144 A.D.3d 1006 (2d Dept. 2016) .......................................................................................13

Rajamin v. Deutsche Bank Nat. Tr. Co.,
   757 F.3d 79 (2d Cir. )..........................................................................................................18

Rodriguez v. Deutsche Bank Nat'l Trust Co.,
   No. CV H-16-1597, 2017 WL 371141 (S.D. Tex. Jan. 26, 2017)...........................................7

Scotto v. Almenas,
   143 F.3d 105 (2d Cir. 1998).....................................................................................12, 16, 18

Springer v. U.S. Bank N.A.,
   No. 15-cv-1107 (JGK), 2015 WL 9462083 (S.D.N.Y. Dec. 23, 2015) ..................................10

U.S. Bank N.A. v. Crutch,
    No. 09-CV-998 (FB), 2012 WL 1605595 (E.D.N.Y. May 8, 2012)........................................14

U.S. Bank, N.A. v. Squadron VCD, LLC,
    No. 10 CV 5484 VB, 2011 WL 4582484 (S.D.N.Y. Oct. 3, 2011), aff'd, 504
    F. App'x 30 (2d Cir. 2012) ......................................................................................................13

U.S. Bank Nat. Ass'n v. Coop. Dist. of the City of Spanish Fort - Highway 98
Pub. Facilities,
    No. CIV.A. 11-0401-WS-M, 2011 WL 4499309 (S.D. Ala. Sept. 29, 2011) ........................11

U.S. Bank Nat. Ass'n v. DRG Crums Mill RI, LLC,
    No. CIV.A. 3:12-1632, 2013 WL 4500655 (M.D. Pa. Aug. 21, 2013) ....................................8

U.S. Bank Nat. Ass'n v. Guy,
    125 A.D.3d 845 (2d Dept. 2015) ............................................................................................16

U.S. Bank Nat'l Ass'n v. 2150 Joshua's Path, LLC,
    No. 13CV1598DLISIL, 2017 WL 4480869 (E.D.N.Y. Sept. 30, 2017) ............................6, 10

U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC,
    859 F. Supp. 2d 602 (S.D.N.Y. 2012)..................................................................................7, 8

U.S. Bank Nat'l Ass'n v. NNN 200 Galleria, LLC,
    No. 13 CIV. 414 (AKH), 2014 WL 11380950 (S.D.N.Y. 2014)..............................................6

U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.,
    205 F. Supp. 3d 386 (S.D.N.Y. 2016)..........................................................................6, 8, 10

U.S. Bank Tr., N.A. v. Dupre,
    No. 6:15-CV-0558, 2016 WL 5107123 (N.D.N.Y. Sept. 20, 2016).......................................10

In re Vargas Realty Enterprises, Inc.,
    440 B.R. 224 (S.D.N.Y. 2010).................................................................................................14

Wang by & through Wong v. New Mighty U.S. Tr.,
    843 F.3d 487 (D.C. Cir. 2016), cert. denied sub nom. New Mighty U.S. Tr. v.
    Wang ex rel. Wong, 137 S. Ct. 2266 (2017).........................................................................11

WBCMT 2007-C33 NY Living, LLC v. 1145 Clay Ave. Owner, LLC,
    964 F. Supp. 2d 265 (S.D.N.Y. 2013)......................................................................................7

Wecare Holdings, LLC v. Bedminster Int'l Ltd.,
    No. 08-CV-6213, 2009 WL 604877 (W.D.N.Y. Mar. 9, 2009) .............................................19

Wells Fargo Bank, N.A., Tr. v. Konover,
   No. 3:05 CV 1924 (CFD), 2009 WL 2710229 (D. Conn. Aug. 21, 2009), aff'd
   sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp., 630 F. App'x 46
   (2d Cir. 2015)...............................................................................................................8

Wells Fargo Bank, N.A. v. CCC Atl., LLC,
   905 F. Supp. 2d 604 (D.N.J. 2012) ...........................................................5, 8, 10

Wells Fargo Bank, N.A. v. Transcon. Realty Inv'rs, Inc.,
   No. 3:14-CV-3565-BN, 2016 WL 3570648 (N.D. Tex. July 1, 2016)...................11

Wells Fargo Bank Nw., N.A. v. Synergy Aerospace Corp.,
   No. 16-CV-8065 (JPO), 2017 WL 3393945 (S.D.N.Y. Aug. 7, 2017) ...................11

Witelson v. Jamaica Estates Holding Corp. I,
   40 A.D.3d 284 (1st Dept. 2007)............................................................................13

**Statutes**

NY UCC § 3-104 ..................................................................................................................14

NY UCC § 3-301 ..................................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 56.........................................................................................................2, 9, 12

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo" or the "Trustee"), as Trustee for the Registered Holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-C2 ("Plaintiff" or the "Trust"), by and through its Special Servicer, CWCapital Asset Management LLC ("CWCAM"), respectfully submits this memorandum of law in opposition to 390 Park Avenue Associates, LLC's Motion for Summary Judgment (the "Cross-Motion") and in support of Plaintiff's Motion for Summary Judgment and Motion to Appoint a Referee (the "Motion"). [1]

## PRELIMINARY STATEMENT

Pending before the Court are cross-motions for summary judgment.  Defendant's motion – based on the same subject matter jurisdiction argument this Court has already rejected – should be denied.  Plaintiff's motion, which establishes all the necessary elements for summary judgment of foreclosure, should be granted.

In accordance with Supreme Court precedent as well as a long line of cases involving commercial mortgage-backed securities ("CMBS") trusts dealing with this exact jurisdictional question, this Court has already decided that the Trustee's citizenship is controlling for purposes of diversity jurisdiction.  Discovery has only confirmed that the Court's prior decision was correct. In its motion for summary judgment, Defendant asks the Court to depart both from its prior decision and from a clear line of case law applying Navarro in the CMBS trust context.  The reasons being offered by Defendant to do so are entirely unconvincing.

Defendant seeks to distract from the central duties assigned to the Trustee in the PSA by listing an array of responsibilities and consent rights of other actors in the securitization.  But

---

[1]   Capitalized terms used but not defined shall be defined as set forth in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Motion to Appoint a Referee (Dkt. No. 131).

1

Defendant misses the point.  The fact that the Special Servicer, or Directing Certificateholder, or other Certificateholders each played a role – however important – in no way makes Wells Fargo a "naked" Trustee.  Rather, as this Court has already held, because the Trustee holds legal title, manages the Trust assets, and controls litigation, Wells Fargo is an "active" Trustee and a real and substantial party to the controversy.  Defendant's motion must therefore be denied.

Conversely, the Court should grant Plaintiff's Motion for summary judgment.  This is a straightforward commercial foreclosure and Plaintiff has established prima facie entitlement to relief, which has not been rebutted.  Plaintiff is the holder of the Note and Mortgage, and was so at the time the Complaint was filed.  There is no dispute that Defendant is in default.

Having abandoned all other affirmative defenses, Defendant's sole remaining defense to foreclosure is a deeply flawed argument that Plaintiff does not have standing.  This argument – based on a misunderstanding of contract dates and the existence of copies of incomplete assignment documents – does not come close to establishing a material dispute of fact.  Plaintiff has established three independent ways in which it became the owner and holder of the Loan Documents, none of which are refuted by the so-called "irregularities" floated by Defendant.  Since there is no remaining material disputes of fact regarding ownership of the Note and Mortgage or Defendant's default, Plaintiff is entitled to summary judgment.

## STATEMENT OF FACTS

Pursuant to Local Rule 56.1(a), Plaintiff respectfully refers the Court to Plaintiff's Statement of Undisputed Material Facts in Support of Motion for Summary Judgment ("SUMF"), Dkt. No. 132, and Plaintiff's Response to 390 Park's Statement of Undisputed Material Facts and Plaintiff's Counter-Statement of Material Facts in Opposition to Defendant's Motion for Summary

Judgment, filed contemporaneously herewith, for a complete statement of undisputed facts relevant to the Motion and the Cross-Motion.

## LEGAL ARGUMENT

### I.  DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Defendant's Cross-Motion must be denied because this Court has subject matter jurisdiction.  As the Supreme Court has recently affirmed, "when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs".  Americold Realty Tr. v. Conagra Foods, Inc., 136 S. Ct. 1012, 1016 (2016).  Here, the Trustee – Wells Fargo – filed this lawsuit in its own name.  Therefore, so long as the Trustee is "active" – and this Court has already found that Wells Fargo is an active Trustee – the Court has subject matter jurisdiction.

### A.  Wells Fargo is an "Active" Trustee.

A trustee is considered "active" and therefore "a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others."  Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 464-65 (1980).  The Trustee in this case possesses those customary powers.  As the Court has already held:

> The PSA provides that the transfer of loans to the Trustee is "absolute" and conveys "all the right, title and interest" in the loans; that the Trustee shall "hold the Trust Fund in trust for the exclusive use and benefit of all present and future Certificateholders"; and that the Trustee may sue to enforce payment or performance on the loans.  The Trustee – Wells Fargo – therefore is a "real and substantial" party to the controversy and its citizenship is considered for purposes of assessing diversity jurisdiction.

Dkt. No. 53 at 5.  Defendant is unable to point to anything either in the PSA or from discovery to repudiate this holding.

First, the text of the PSA confirms the Court's holding that the Trustee is a real and substantial party to the controversy.  As this Court has already noted, the PSA "grants the Trustee

substantially the same powers that the trustee in *Navarro* had." Dkt. No. 53 at 5. Like <u>Navarro</u>, the Trustee here has legal title,[2] manages the assets, and controls litigation. See <u>Navarro</u>, 446 U.S. at 465. Pursuant to Section 2.01 of the PSA, the Trustee, for the benefit of the Certificateholders, was conveyed "all the right, title and interest of the Depositor . . . in, to and under (i) the Loans identified on the Mortgage Loan Schedule, (ii) the Mortgage Loan Purchase Agreements, and (iii) all other assets included or to be included in the Trust Fund." Hundertmark Decl., Ex. 7 § 2.01(a).[3] Section 2.01(b) required the physical delivery of the mortgage loans to the Trustee, including the original Loan Documents relevant to this action. <u>Id.</u> § 2.01(b). Section 2.01(c) directs the Trustee to cause certain loan documents to be properly recorded. <u>Id.</u> § 2.01(c).

The Trustee continues to be responsible for the management of the assets throughout the life of the Trust. Importantly, the Trustee is responsible for the collection, investment and distribution of the proceeds of the Loans in the Trust Fund to the various investors, and has the authority to institute and prosecute the appropriate proceedings to enforce payment or performance as necessary.[4] See PSA §§ 3.04(b)-(e) and (j), 3.05(b) and 3.06(c). The PSA also grants the

---

[2]   Defendant concedes, as it must, that the Trustee holds legal title. See Dkt. No. 137 at 14 and 21.

[3]   This section also demonstrates the Trustee's control over the litigation. See <u>LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.</u>, 180 F. Supp. 2d 465, 471 (S.D.N.Y. 2001) ("Section 2.01 conveys "*all* the right, title, and interest" in the mortgages to LaSalle as trustee. The plain meaning of these words ordinarily includes the power to bring suit to protect and maximize the value of the interest thereby granted.") (internal citation omitted; italics in opinion).

[4]   In holding "that the PSA adequately demonstrates that Wells Fargo is an active trustee," one District Court emphasized the significance of PSA provisions similar to the ones here:

> Pursuant to the provisions of the PSA, quoted at length *supra* at pages 607 through 608, ***Wells Fargo as Trustee has actual control over the trust assets: it holds legal title to the mortgage loans; the funds in both the Collection Account and the Distribution Account belong to it; only it has the power to invest the money in the Distribution Account.***
>
> Moreover, contrary to CCC Atlantic's argument, the fact that the Trustee has delegated loan servicing duties to the Master Servicer and the Special Servicer does not compel the conclusion that the Trustee lacks the requisite control. As already explained, ***the money the servicers collect belongs to Wells Fargo (for the benefit of the Certificateholders)***, not the servicers themselves. Additionally, the ultimate duty to collect on the mortgage loans—whether in the regular course of

4

Trustee authority to control litigation.  Section 10.03(c) of the PSA – appropriately titled "Limitation on Rights of Certificateholders" – acknowledges the Trustee's ability to initiate a lawsuit in its own name, while proscribing Certificateholders from filing a lawsuit unless (i) twenty-five percent of a class of Certificateholders requests that the Trustee initiate litigation and (ii) the Trustee refuses to file the lawsuit in its own name.  <u>See</u> Foley Supp. Decl.,[5] Ex. 20 § 10.03(c).

Defendant offers no evidence to refute the fact that the Trustee bears each of these responsibilities as listed in the PSA.  In fact, no factual discovery has in any way changed the basis for the Court's finding that the Trustee is the real and substantial party to this controversy:

> The PSA provides that the transfer of loans to the Trustee is "absolute" and conveys "all the right, title and interest" in the loans; that the Trustee shall "hold the Trust Fund in trust for the exclusive use and benefit of all present and future Certificateholders"; and that the Trustee may sue to enforce payment or performance on the loans.

Dkt. No. 53 at 5.  To the contrary, fact discovery has confirmed that the Court's decision finding it has subject matter jurisdiction was correct.  Deposition testimony confirmed that, as in <u>Navarro</u>, the Trustee here is an "active" trustee, and therefore the party whose citizenship must be considered in assessing diversity jurisdiction. <u>See</u> <u>Navarro</u>, 446 U.S. at 464-65 ("a trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others," and holding that "respondents are active trustees whose control over the assets held in their names is real and substantial.").  The

---

business, or through foreclosure—remains with Wells Fargo because it must fulfill the duty in the absence of the Master Servicer or the Special Servicer.

<u>Wells Fargo Bank, N.A. v. CCC Atl., LLC</u>, 905 F. Supp. 2d 604, 611–12 (D.N.J. 2012) (emphasis added).

[5]   The Supplemental Declaration of Heather Deans Foley in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Cross-Motion for Summary Judgment is cited as "<u>Foley Supp. Decl.</u>" herein.

testimony of Andrew Hundertmark, Managing Director at CWCAM, established that the Trustee

is a real and substantial party to this action:

> Q:  What is their world at -- at the point that you're in the picture -- you, being CWCapital -- after a special servicing transfer, what is in the Trustee's bailiwick?
> MS. FOLEY:  Objection to the form of the question.
> THE WITNESS:  My knowledge here is somewhat limited.  They do, as I say, compile and report out the comments and the financial statements that we provide to them.  They keep track of who the bondholders are and when control in a trust has switched from one bondholder to another as a result of losses in that trust.  And they work with the next bondholder to confirm or not confirm that they are the new CCR.  That's my primary knowledge of what they do.
> Q:  Okay.
> A:  And they are custodian of the original loan documents.

Foley Decl., Ex. 12 at 155:14 – 156:13.  Hundertmark also testified that "at the end of each month,

[CWCAM] provide[s] comments on the -- on every asset to the Trustee so that they can be put on

the Trustee's website for the benefit of the certificate holders."  Id. at 92:3-7.  In other words, at

all times, Wells Fargo remained an "active" trustee and, with discovery now closed, Defendant is

unable to rebut these undisputed facts.

The Court's previous holding that Wells Fargo is an "active" Trustee is in accord with the

decisions of numerous other courts that have analyzed the role of a trustee to a mortgage-backed

securities trust.  See, e.g., U.S. Bank Nat'l Ass'n v. 2150 Joshua's Path, LLC, No.

13CV1598DLISIL, 2017 WL 4480869, at *3 (E.D.N.Y. Sept. 30, 2017) ("[T]he magistrate judge

correctly looked to the citizenship of the trustee. Accordingly, there is complete diversity of

citizenship, vesting the Court with subject matter jurisdiction over this action."); U.S. Bank, Nat'l

Ass'n v. UBS Real Estate Sec. Inc., 205 F. Supp. 3d 386, 410 (S.D.N.Y. 2016) ("The Court

concludes that the Trustee is the real and substantial party to the controversy."); U.S. Bank Nat'l

Ass'n v. NNN 200 Galleria, LLC, No. 13 CIV. 414 (AKH), 2014 WL 11380950, at *2-3 (S.D.N.Y.

2014) ("The trustee's citizenship, here U.S. Bank, controls for purposes of determining

diversity."); <u>WBCMT 2007-C33 NY Living, LLC v. 1145 Clay Ave. Owner, LLC</u>, 964 F. Supp. 2d 265, 270 (S.D.N.Y. 2013) ("WBCMT has all right, title and interest in the loan documents. That makes it a real and substantial party and not merely a shell designed to circumvent the requirements of diversity jurisdiction."); <u>U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC</u>, 859 F. Supp. 2d 602, 606-7 (S.D.N.Y. 2012) ("Courts in this Circuit have held that PSAs containing language virtually identical to the PSA at issue here allowed the trustees in those cases to bring suit in their own right"); <u>Bank of Am., N.A. v. 3301 Atlantic, LLC</u>, No. 10-CV-5204(FB), 2012 WL 2529196, at *4-5 & n.10 (E.D.N.Y. June 29, 2012) ("Bank of America is a real party in interest and, under Navarro, is appropriately viewed as a North Carolina citizen."); <u>Nomura Asset Capital Corp.</u>, 180 F. Supp. 2d at 471 (Holding that the trustee and not the special servicer was the "real party in interest").[6]  Defendant repeatedly acknowledges that the PSA here, and its allocation of duties, is typical for CMBS trusts.  <u>See</u>, <u>e.g.</u>, Dkt. No. 137 at 9-10.  The Court should therefore adhere to its previous finding – which is in accord with, if not all, then the overwhelming majority of case law dealing with CMBS trusts[7] – that Wells Fargo is an "active" Trustee.

---

[6]  Courts outside of New York have likewise consistently held that a CMBS trustee is considered active and therefore the real party in interest.  <u>See</u>, <u>e.g.</u>, <u>Halley v. Deutsche Bank National Trust Co., as Trustee for Morgan Stanley Abs Capital I Inc., Trust 2004-he3, Mortgage Pass Through Certificates, Series 2004-he3, et al.</u>, No. CV H-15-1174, 2016 WL 3855872 (S.D. Tex. July 15, 2016) ("The Supreme Court's recent <i>Americold</i> holding reaffirmed the holding in [<i>Navarro</i>] that 'when a trustee files a lawsuit or is sued in her own name, her citizenship is all that matters for diversity purposes.'") (citations omitted); <u>Rodriguez v. Deutsche Bank Nat'l Trust Co.</u>, No. CV H-16-1597, 2017 WL 371141, at *3 (S.D. Tex. Jan. 26, 2017) ("The court finds that Deutsche Bank provided evidence to show that the trustee has the customary powers to hold legal title and direct the Servicer to invest and control the trust's assets as set out in <i>Navarro</i>."); <u>LMP Ninth St. Real Estate, LLC v. U.S. Bank Nat'l Ass'n</u>, No. 8:16-CV-2463-T-33AEP, 2016 WL 6068302, at *3 (M.D. Fla. Oct. 17, 2016) ("Based on U.S. Bank's powers to hold, manage, and control the Trust's assets for the benefit of the Certificateholders, the Court finds that Trust is a traditional trust and U.S. Bank is a real party in interest in this case. . . . As U.S. Bank is being sued in its own name as trustee of a traditional trust, U.S. Bank's citizenship is determinative for diversity purposes.").

[7]  Presumably because no CMBS cases support Defendant's view of the role of a CMBS trustee, Defendant relies instead on (i) the website of U.S. Bank Global Corporate Trust Services, an entity which is in no way involved in this litigation; and (ii) a 2010 position paper arguing on behalf of the American Bankers Association.  <u>See</u> Dkt. No. 137 at 9-10.

20122089-v4

**B.**     **Neither the Role of the Special Servicer Nor the Approval/Consent Rights of the Directing Certificateholder Transforms Wells Fargo Into a "Naked" Trustee.**

The fact that the Trustee delegated certain responsibilities to CWCAM does not somehow make Wells Fargo a "naked" trustee.  "[D]elegation to a servicer is not relevant because, in so delegating, the Trustee does not relinquish the powers it holds as Trustee."  Wells Fargo Bank, N.A., Tr. v. Konover, No. 3:05 CV 1924 (CFD), 2009 WL 2710229, at *4 (D. Conn. Aug. 21, 2009), aff'd sub nom. Wells Fargo Bank, N.A. v. Konover Dev. Corp., 630 F. App'x 46 (2d Cir. 2015).  Arguments that delegation to a special servicer causes a trustee to cease being a real and substantial party have been routinely rejected.  See, e.g., Nomura Asset Capital Corp., 180 F. Supp. 2d at 470 ("In effect, LaSalle is the master who has delegated some of its duties to its servant, Lend Lease. Nevertheless, LaSalle remains the holder of legal title to the mortgage package transferred pursuant to the PSA, including the hospital loan that is the subject of this dispute."); LaSalle Bank Nat. Ass'n v. Lehman Bros. Holdings, 237 F. Supp. 2d 618, 633 (D. Md. 2002) ("Merely because the PSA in this case delegates to CMSLP the right to institute a suit in its capacity as Special Servicer does not affect the basic premise that the trustee of an express trust is the real party in interest when suing on behalf of the trust."); 3301 Atl., LLC, 2012 WL 2529196, at *5 (concluding that trustee was real party in interest); CCC Atl., LLC, 905 F. Supp. 2d at 612 ("the fact that the Trustee has delegated loan servicing duties to the Master Servicer and the Special Servicer does not compel the conclusion that the Trustee lacks the requisite control."); U.S. Bank Nat. Ass'n v. DRG Crums Mill RI, LLC, No. CIV.A. 3:12-1632, 2013 WL 4500655, at *3 (M.D. Pa. Aug. 21, 2013) ("Here, despite the delegation of certain administrative duties to the Special Servicer, U.S. Bank National Association, as trustee, is the real party of interest and has standing to bring this suit."); see also UBS Real Estate Sec. Inc., 205 F. Supp. 3d at 409-10; Nesbitt Bellevue Prop. LLC,

8

859 F. Supp. 2d at 608.  As in the many cases rejecting the argument that the Borrower makes here, despite delegating certain duties, the Trustee ultimately retained control of the Trust.

Defendant's unsupported argument that the Directing Certificateholder's citizenship must be considered for purposes of establishing diversity jurisdiction likewise fails.[8]  Contrary to Defendant's description of the Directing Certificateholder as the source of all authority, in reality, the Directing Certificateholder is given only the right to *approve or consent* to certain actions or decisions.  See Dkt. No. 137 at 12 (listing actions Directing Certificateholder must be notified of or requiring consent).  Defendant contends, albeit incorrectly,[9] that because the Directing Certificateholder can remove the Trustee, that the Trustee must be "naked." But this argument is contrary to Navarro:

> The shareholders may elect and remove trustees; they may terminate the trust or amend the Declaration; and they must approve any disposition of more than half of the trust estate. . . . *But this form of "control" does not strip the trustees of the powers that make them real parties to the controversy for purposes of diversity jurisdiction.* Indeed, their authority over trust property—short of partial liquidation—is expressly made "free from any power and control of the Shareholders, to the same extent as if the Trustees were the sole owners of the Trust Estate in their own right. . . . "

Navarro, 446 U.S. at 465 n.14 (emphasis added; citations omitted).  Defendant's argument has also been rejected by courts applying Navarro:

> *The Court is also unpersuaded by CCC Atlantic's argument that Wells Fargo lacks the requisite control because, under limited circumstances, particular*

---

[8]   Not only does Defendant's argument fail as a matter of law, but Defendant has failed to establish through admissible evidence, as required by Fed. R. Civ. P. 56, the citizenship of the Directing Certificateholder.  "For purposes of diversity jurisdiction, a limited partnership has the citizenship of each of its general and limited partners."  Caren v. Collins, 689 F. App'x 75, 76 (2d Cir. 2017).  Although Defendant argues that the Court lacks subject matter jurisdiction, Defendant has not identified the citizenship of each general and limited partner of the Directing Certificateholder, DW Partners, LP.  Indeed, Defendant offers nothing in the way of admissible evidence to establish that DW Partners, LP is a citizen of New York for purposes of diversity jurisdiction and, for that reason alone, Defendant's Cross-Motion should be denied.

[9]   Defendant completely misconstrues the PSA.  Section 8.07(c) of the PSA provides that the holders of certificates "entitled to at least 51% of the Voting Rights" may remove the Trustee, not the Directing Certificateholder.  See Declaration of Jesse Ryan Loffler in Support of 390 Park Avenue Associates, LLC's Motion for Summary Judgment, Ex. 6 § 8.07(c).

9

> ***Certificateholders may make decisions concerning the trust.*** For example, CCC Atlantic relies on PSA Section 9.01, which gives certain Certificateholders the right to terminate the trust by purchasing all of the assets of the trust. However, such was the situation in *Navarro* where the Trustee was held to be an active trustee. In that case, the Court observed that the trust beneficiaries could "elect and remove trustees; ... terminate the trust or amend the Declaration [of trust]; and they must approve any disposition of more than half the trust estate." *Navarro,* 446 U.S. at 465 n. 14, 100 S.Ct. 1779. ***Thus, the fact that Certificateholders have some control over the trust does not compel the conclusion that Wells Fargo is not an active trustee.***

CCC Atl., LLC, 905 F. Supp. 2d at 612 (emphasis added); see also DHI Holdings, LP v. Mortgageit, Inc., No. CV H-17-0960, 2017 WL 3116152, at *2 (S.D. Tex. July 21, 2017).

The six cases that Defendant relies upon do not support a conclusion that the Trustee in this case is "naked."  Two of the six cases are irrelevant because they did not involve a trustee bringing a lawsuit in its own name.  See JPMCC 2005-CIBC13 Collins Lodging, LLC v. Philips S. Beach, LLC, No. 10-20636-CIV, 2010 WL 4317000, at *4  (S.D. Fla. Oct. 22, 2010) ("Here, Wells Fargo, as trustee for the registered holders of the JPMCC Certificates, is not attempting to sue in its own right. Rather, Collins—'a special purpose entity'—is suing Philips in its own name."); CWCapital Asset Mgmt., LLC v. Chicago Properties, LLC, 610 F.3d 497, 502 (7th Cir. 2010) (Special servicer, not trustee, brought lawsuit in its own name, and noting that the trustee submitted an affidavit ratifying the lawsuit).  The third case relied upon by Defendant, U.S. Bank Tr., N.A. v. Dupre, No. 6:15-CV-0558 (LEK/TWD), 2016 WL 5107123, at *4 (N.D.N.Y. Sept. 20, 2016), involved a Delaware statutory trust, which unlike a New York common law trust,[10] can

---

[10]   The Trust at issue in the instant case could not bring this action in its own name.  See 2150 Joshua's Path, LLC, 2017 WL 4480869, at *3 ("Here, the trust for which U.S. Bank serves as trustee is an express New York common law trust. Unlike the Maryland REIT at issue in *Americold*, which was authorized to sue or be sued, '*under New York law, a trust cannot sue or be sued*, and suits must be brought by or against the trustee.'") (quoting Springer v. U.S. Bank N.A., No. 15-cv-1107 (JGK), 2015 WL 9462083, at *2 n.1 (S.D.N.Y. Dec. 23, 2015)) (italics in opinion); UBS Real Estate Sec. Inc., 205 F. Supp. 3d at 411 ("In contrast to a Maryland real estate trust, the Trusts have no power to sue on their own behalves and the Trustee alone is responsible for the corpus of the Trusts. The Court therefore concludes that only the Trustee's citizenship is relevant to this diversity analysis.").

sue in its own name, and was dismissed largely due to the plaintiff's failure to provide evidence the Court requested.  The fourth case, U.S. Bank Nat. Ass'n v. Coop. Dist. of the City of Spanish Fort - Highway 98 Pub. Facilities, No. CIV.A. 11-0401-WS-M, 2011 WL 4499309, at *6 (S.D. Ala. Sept. 29, 2011), is also easily distinguishable because, unlike the PSA here, the applicable trust agreement allowed the trustee to "act only as directed to do by the certificate holders."  The reasoning of the court in Wells Fargo Bank, N.A. v. Transcon. Realty Inv'rs, Inc., No. 3:14-CV-3565-BN, 2016 WL 3570648 (N.D. Tex. July 1, 2016), the fifth case cited by Defendant, has since been rejected by the Fifth Circuit as well as other courts.  See Bynane v. Bank of New York Mellon for CWMBS, Inc. Asset-Backed Certificates Series 2006-24, 866 F.3d 351, 358–59 (5th Cir. 2017) ("In sum, *Navarro* provides the appropriate framework here: BONYM's citizenship, not the trust's shareholders' citizenships, is relevant for determining diversity jurisdiction because BONYM was sued in its own name as trustee and it has sufficiently real and substantial control over the trust's assets."); Wang by & through Wong v. New Mighty U.S. Tr., 843 F.3d 487, 494 (D.C. Cir. 2016), cert. denied sub nom. New Mighty U.S. Tr. v. Wang ex rel. Wong, 137 S. Ct. 2266 (2017) (disagreeing with the Transcontinental court's reading of Americold and stating, "We think Winston's reading of *Americold*—that is, the citizenship of a traditional trust depends only on the trustees' citizenship—is the better one.").  Finally, the last case relied upon by Defendant, Wells Fargo Bank Nw., N.A. v. Synergy Aerospace Corp., No. 16-CV-8065 (JPO), 2017 WL 3393945, at *5 (S.D.N.Y. Aug. 7, 2017), supports a finding of subject matter jurisdiction here as that court held that "Avolon's ability to direct some aspects of Wells Fargo's management of the Aircraft does not transform Wells Fargo into a mere nominal party."

In sum, in the months that have passed since the Court denied 390 Park's motion to dismiss for lack of subject matter jurisdiction, nothing has changed.  The Court's previous legal

11

conclusions remain the law of the case, and despite the Borrower's best efforts to distract from the issue at hand by focusing on the various responsibilities of CWCAM or the Directing Certificateholder, the undisputed facts firmly establish that the Trustee is the real and substantial party to this controversy.   The Trustee's citizenship should therefore be considered in assessing diversity jurisdiction.   See Americold, 136 S. Ct. at 1016 ("when a trustee files a lawsuit in *her* name, her jurisdictional citizenship is the State to which she belongs").   Because there is complete diversity of citizenship as plead in the Complaint, Defendant's Cross-Motion for summary judgment must be denied.

## II.        PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

Plaintiff should be granted summary judgment because "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Because Plaintiff has established its prima facie entitlement to relief by demonstrating that there is no genuine issue as to any material fact, Defendant must come forward with specific facts showing a genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  To defeat Plaintiff's Motion, Defendant may not rely on mere "conclusory allegations or unsubstantiated speculation," but rather must present "evidence on which the jury could reasonably find for the non-movant."  Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations, quotation marks, and brackets omitted).  Defendant likewise cannot prevent the entry of summary judgment by attempting to create factual disputes immaterial to the issue before the Court.  Rather, ***"[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."***  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (emphasis added).  Defendant's numerous red herrings are wholly irrelevant and in no way materially dispute the only facts Plaintiff needs to establish for summary judgment: (1) that the Note and Mortgage exist, (2) that Plaintiff owns the Note and

12

Mortgage, and (3) that Defendant is in default.  See Witelson v. Jamaica Estates Holding Corp. I, 40 A.D.3d 284, 284 (1st Dept. 2007).

### A.    Plaintiff Has Established a Prima Facie Case for Summary Judgment.

To establish a prima facie case for summary judgment on a foreclosure claim, a plaintiff need only show "the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment."  Witelson, 40 A.D.3d at 284; see also OneWest Bank, N.A. v. Rosado, No. 14 Civ. 9917 (LGS), 2016 WL 3198305, at *2 (S.D.N.Y. June 7, 2016) slip op. ("Under New York law, a plaintiff demonstrates prima facie entitlement to judgment as a matter of law in a foreclosure action by submitting the mortgage, the unpaid note, and evidence of the defendant's default.") (internal quotation marks and citation omitted); PennyMac Corp. v. Chavez, 144 A.D.3d 1006, 1006-7 (2d Dept. 2016) (same).  "Once plaintiff has established its prima facie case by presenting the note, mortgage, and proof of default, the mortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the mortgagor."  U.S. Bank, N.A. v. Squadron VCD, LLC, No. 10 CV 5484 VB, 2011 WL 4582484, at *4 (S.D.N.Y. Oct. 3, 2011), aff'd, 504 F. App'x 30 (2d Cir. 2012).  Plaintiff attached copies of the Mortgage and unpaid Note to the Complaint.  Defendant does not dispute the fact that Plaintiff has presented the Note and Mortgage, and has had the opportunity to inspect the Loan file, including "one original of the Note."  See 390 Park's Response to SUMF ¶ 26.  Plaintiff has also established Defendant's default, which Defendant does not dispute.  See 390 Park's Response to SUMF ¶¶ 16-18.

As to Plaintiff's ownership of the Note and Mortgage, Defendant has acknowledged "that (i) the Trust is the holder of the Loan Documents;[11] and (ii) CWCAM has full power and authority to enforce the Trust's rights and remedies under the Loan Documents and applicable law."  SUMF ¶ 13; 390 Park's Response to SUMF ¶ 13 (acknowledging that 390 Park executed the PNA).[12] Further, even if the Defendant were not estopped from now challenging the fact that the Trustee is the holder of the Note and Mortgage (which it is), Defendant still fails to raise a material dispute of fact as to Plaintiff's ownership of the Note and Mortgage.  Despite desperate attempts to cast doubt on the assignment of the Loan Documents to the Trustee, Defendant has not actually refuted any of the three ways in which the Plaintiff became the holder of the Loan Documents.

First, Plaintiff was in possession of the original Note at the time the Complaint was filed, and remains in possession of the Note.  See SUMF ¶ 25; Hundertmark Decl. ¶¶ 20-23; Foley Decl., Ex. 12 at 29:7-16.  This alone is enough to establish Plaintiff's ownership of the Note and right to enforce.  See NY UCC § 3-104 (defining "negotiable instrument") and § 3-301 (defining the rights of a holder); see also U.S. Bank N.A. v. Crutch, No. 09-CV-998 (FB), 2012 WL 1605595, at *2 n. 4 (E.D.N.Y. May 8, 2012) ("possession alone is sufficient to transfer ownership of the debt" for purposes of instituting a foreclosure action); see also In re Feinberg, 442 B.R. 215, 223 (Bankr.

---

[11]  Defendant effectively conceded, in its Cross-Motion, that the Trustee holds legal title.  See Dkt. No. 137 at 14 and 21.  This acknowledgement is fatal to Defendant's standing argument.

[12]  Defendant's contention that the PNA is inadmissible is incorrect.  See Dkt. No. 137 at 27.  The PNA does not itself contain any settlement discussion.  Rather, it is a binding contract between the parties setting parameters for a settlement discussion to follow.  See In re Vargas Realty Enterprises, Inc., 440 B.R. 224, 242 (S.D.N.Y. 2010) ("Contrary to Appellants' assertions, the Pre–Negotiation Agreement is not inconsistent with New York's public policy encouraging settlements, *nor is it inadmissible as a settlement discussion pursuant to Federal Rule of Evidence 408. . . . Here, the Agreement is evidence of Appellants' intent to ratify the underlying CFA note and mortgage rather than proof of the contents of any offer to settle.*") (emphasis added).  Nor is the PNA inadmissible because the PNA itself bars use of oral or written communications during the "Negotiations."  After all, the Pre-Negotiation Agreement is quite literally pre-Negotiation.

14

S.D.N.Y. 2010) ("Bank of New York's possession of the note and mortgage attests to their delivery and is sufficient evidence of a valid mortgage assignment.").[13]

Second, Plaintiff established its ownership of the Note and Mortgage through the Allonge and General Assignment.  See Dkt. No. 131 at 7.  Defendant does not deny the existence or validity of these documents.  Rather, while acknowledging that "there is no requirement that an Allonge be dated," Dkt. No. 137 at 28, Defendant argues that "Plaintiff must demonstrate when it received the Allonge[.]"  Id. at 28-29.  Unsurprisingly, Defendant does not offer any case law or other support for this proposition because it is not an actual requirement.  Nevertheless, the undisputed deposition testimony is that Wells Fargo took possession of the Allonge "sometime prior to that PSA date" which was in May of 2005 – more than ten (10) years prior to the commencement of this action.  Foley Decl., Ex. 12 at 29:7-16.

Third, Plaintiff established its ownership of the Loan Documents via the Mortgage Assignment.  See Dkt. No. 131 at 7-8.  Again, Defendant does not deny the existence or validity of this notarized and publicly-recorded document.  Instead, it points to (i) the existence of a copy of a separate blank mortgage assignment document, and (ii) the Mortgage Assignment's use of an "effective date."  As discussed below, these so-called irregularities do not raise any material dispute that casts doubt on the Mortgage Assignment or the Trustee's ownership of the Mortgage.

Since Plaintiff has established its prima facie entitlement to summary judgment, which Defendant has not overcome, summary judgment is appropriate.

---

[13]   Defendant is forced to acknowledge that Plaintiff is in possession of the Note and that it is original.  See 390 Park's Response to SUMF ¶ 26.  Defendant suggests, however, not that Plaintiff does not have an original Note, but rather that there *may have been* more than one original of the Note.  See Dkt. No. 137 at 25-28.  The reasons this theory is completely meritless are discussed in Section II.B below, but the "maybe there is another original out there somewhere" theory does not create a material dispute of fact regarding Plaintiff's ownership of the Loan Documents.  Defendant does not cite any case law in which the holder of an original note was denied foreclosure because of the possible existence of a duplicate original note.

**B.**     **There Are No Material Disputes of Fact Regarding Plaintiff's Standing.**

Defendant's various theories regarding "discrepancies" and "irregularities" can all be summarily rejected.   While Defendant throws an array of supposed timing issues and never-completed documents at the wall in hopes that something sticks, none comes close to raising a material dispute of fact based on admissible evidence that would prevent summary judgment for Plaintiff.  See Anderson, 477 U.S. at 248; Scotto, 143 F.3d at 114.

Defendant's first standing argument is that in addition to establishing standing "by demonstrating that it is both the holder or assignee of the subject mortgage and the holder or assignee of the underlying note at the time the action is commenced," U.S. Bank Nat. Ass'n v. Guy, 125 A.D.3d 845, 846 (2d Dept. 2015), which Plaintiff has done, Plaintiff must also "demonstrate that it is in possession of all of the physical originals of the note or allonge, and/or that is was properly assigned such documents."  Dkt. No. 137 at 23.  Defendant offers no legal support for this additional requirement.   Even assuming, *arguendo*, that there is such a requirement, the admissible evidence establishes that there is but one Note and Plaintiff has firmly established that it is in possession of that original Note and the corresponding original Allonge to Wells Fargo, as Trustee.  See SUMF ¶ 25; Hundertmark Decl. ¶¶ 20-23; Foley Decl., Ex. 12 at 29:7-16.

Under the circumstances present here, none of the cases cited by Defendant supports the conclusion that Plaintiff lacks standing.  In B & H Fla. Notes LLC v. Ashkenazi, 149 A.D.3d 401, 403 (1st Dept. 2017), the court held that plaintiff's motion for summary judgment should have been denied because "plaintiff was inconsistent as to whether it physically held the note at the time it commenced this foreclosure action."  Here, there is no such inconsistency; the Note was attached to Plaintiff's Complaint.  In Nationstar Mortg., LLC v. Davidson, 116 A.D.3d 1294, 1296 (3d Dept. 2014), even though the final allonge indorsement was blank (which is not the case here), the

Court still found that the Plaintiff had standing as the holder of the note and mortgage because "both the note with the indorsement in blank and the mortgage were in Aurora's physical possession prior to the commencement of the action."[14]

Defendant next argues, without any admissible evidence, that there ***may be*** multiple originals of the Loan Documents.  To be clear, Defendant does not argue that there ***are*** duplicate originals, by, for example, including sworn testimony from Graham O'Brien stating that he signed multiple sets of each of the Loan Documents.  Rather, Defendant's multiple originals theory revolves around the following testimony from Plaintiff's 30(b)(6) witness:

> [MR. LOFFLER:]     Under the heading, Critical Documents in Box B, on the right-hand column, it says, "Originals."
> A.     Yes.
> Q.     Do you understand that to mean there were multiple sets of originals in this?
> MS. FOLEY:  Objection to the form and foundation.
> THE WITNESS:  Yes, I would take that as a plural.

Loffler Opp. Decl.,[15] Ex. B at 54:7-16.  In other words, Defendant is arguing that Plaintiff is not entitled to summary judgment because Plaintiff's 30(b)(6) witness agreed that the word "Originals" is plural.[16]  Such rank speculation is not sufficient to establish a material dispute of

---

[14]   Defendant's cases from outside New York are equally inapposite.  Delia v. GMAC Mortg. Corp., 161 So. 3d 554 (Fla. Dist. Ct. App. 2014), a case involving a lost note and a Florida statute about the enforcement of lost notes, is not remotely relevant to this case because the Note is not lost.  Fannie Mae v. Trahey, No. 12CA010209, 2013 WL 3534475 (Ohio Ct. App. July 15, 2014) involved two different (and conflicting) notes, neither of which was indorsed to the plaintiff in that case.  In BAC Home Loan Serv. v. McFerren, 6 N.E.3d 51, 54 (Ohio Ct. App. 2013), "none of the evidence in the record demonstrate[d] that BAC had possession of the Note at the time that it filed the complaint."  By contrast, here, Plaintiff has established three independent ways in which it became holder of the Note before the Complaint was filed.  Finally, Defendant cites Deutsche Bank Nat. Tr. Co. v. Johnston, 369 P.3d 1046, 1057 (N.M. 2016), in which "the undated indorsed note that Deutsche Bank presented at trial did not prove that Deutsche Bank had standing when it filed its complaint."  By contrast, here, Plaintiff has an original Allonge explicitly indorsing the Note to Plaintiff, which it was in possession of at the time the Complaint was filed.

[15]   The Declaration of Jesse Ryan Loffler in Opposition to Plaintiff's Motion for Summary Judgment (Dkt. No. 141) is cited as Loffler Opp. Decl. herein.

[16]   The plural "Originals" refers to the various allonges and corresponding notes which the Note – a "Consolidated, Amended and Restated Promissory Note" – consolidated.  See Loffler Opp. Decl., Ex. A (Trust0000298 and Trust0000301).  Indeed, the entry on the Document Delivery Checklist for line "A.  Promissory Note (Consolidated, Amended and Restated)" indicates a singular "Original," which Defendant conveniently ignores.

17

fact that would preclude entry of summary judgment in Plaintiff's favor.[17]  See Scotto, 143 F.3d at 114.

Next, Defendant argues that the existence of a copy of an incomplete, undated and unrecorded version of the Mortgage Assignment and a copy of a partially blank version of the General Assignment[18] somehow affect Plaintiff's standing.  See Dkt. No. 137 at 29-30.  To the extent that those documents existed in blank, they could not have caused an assignment because there is no assignee listed.  Therefore, Plaintiff, to whom the Mortgage was assigned by the fully executed and publicly-recorded Mortgage Assignment and to whom other Loan Documents were assigned through a fully executed General Assignment, was the only valid assignee of the Loan Documents.

---

See id. at Ex. A (Trust0000298).  In any event, in addition to possessing the original Note and Allonge, Plaintiff is in possession of the prior "original" (now-consolidated) notes and their corresponding allonges, and will make them available for inspection upon request.  See Foley Supp. Decl. ¶ 9.

[17]  The letter to Deutsche Bank (Loffler Opp. Decl., Ex. C) is yet another red herring.  Plaintiff is not required to identify the whereabouts of the Loan Documents at every stage since the Loan origination.  Rather, Plaintiff must establish that it was the holder of the Loan Documents at the time the Complaint was filed, which it has repeatedly done.  See Dkt. No. 131 at 5-8.  Further, since the Borrower has both directly and indirectly acknowledged that Plaintiff holds the Note and Mortgage, and since the Borrower has never suggested another entity holds the Loan Documents, its vague suggestion that Deutsche Bank might have rights under the Loan Documents is entirely unconvincing.  See IRB-Brasil Resseguros S.A. v. Portobello Int'l Ltd. IRB-Brasil Resseguros S.A. v. Portobello Int'l Ltd., 84 A.D.3d 637, 637 (1st Dept. 2011) ("In opposition, defendants fail to raise issues of fact regarding the ownership or location of the global note.  The record shows that defendants accepted the initial loan . . . , *paid interest on the global note for a number of years and, at the time of their default, negotiated new terms with IRB, implicitly admitting that IRB was the owner of the note. . . . Defendants cannot now be heard to object to the ownership which they embraced when it suited them*.") (emphasis added; citation omitted); Rajamin v. Deutsche Bank Nat. Tr. Co., 757 F.3d 79, 85 (2d Cir. 2014) ("Further, plaintiffs' challenge to defendants' claim of ownership of plaintiffs' loans, implying that the loans are owned by some other entity or entities, is highly implausible, for that would mean that since 2005 there was no billing or other collection effort by owners of loans whose principal alone totaled $3,776,000.").

[18]  Like the other original Loan Documents, the so-called "filled out" version of the General Assignment, a copy of which was attached to the Complaint and *thus in Plaintiff's possession at the time the Complaint was filed*, was included in the original Loan file that was inspected by Defendant's counsel in December of 2017.  See Foley Supp. Decl. ¶ 10.  The fact that there exists a copy of an earlier, incomplete version of that document that was produced in discovery is of no consequence.

Even more perplexing is Defendant's argument that a contract cannot use an "effective date." The Mortgage Assignment has an "Effective date" of May 26, 2005[19] (which is the "Closing Date" of the PSA). See Hundertmark Decl., Ex. 6; Hundertmark Decl., ¶ 8 & Ex. 7 at 20. This means that the assignment of the Mortgage was effective on May 26, 2005. While the use of effective dates is a common practice, since Defendant complains that "Plaintiff cites nothing for the permissibility of such forward-dating," Dkt. No. 137 at 30, here is an example of "forward-dating" a contract: the Borrower signed the Mortgage on March 7, 2005, and the Original Lender signed the Mortgage on March 8, 2005, yet "the Mortgage is dated as of March 9, 2005." See SUMF ¶ 4; 390 Park's Response to SUMF ¶ 4.[20]

Finally, Defendant fails to dispute the fact that the Mortgage was also assigned to the Plaintiff through the PSA. In arguing that the PSA could not have assigned the Mortgage because the PSA is dated May 1, 2005, the Defendant simply ignores the PSA's Closing Date of May 26, 2005 as being the effective date of the transfer of the Mortgage to Plaintiff. See Hundertmark Decl., Ex. 7 at page 20 (defining Closing Date) and § 2.01(b) (requiring Depositor to direct each Mortgage Loan Seller to deliver Mortgage File to the Trustee "on or before the Closing Date").[21]

---

[19] An effective transfer of the Loan Documents on May 26, 2005 undermines Defendant's argument regarding the ability of the Original Lender to modify the Loan Agreement on May 9, 2005. Nonetheless, if Defendant wants to persist that the First Amendment to Loan Agreement post-dates the assignment to Plaintiff and is therefore, presumably, ineffective, Plaintiff will go back and recalculate the additional interest owed since 2005 at the rate of 5.526% contained in the Loan Agreement (as opposed to the reduced rate of 5.26927272727273% contained in the First Amendment to Loan Agreement). See Hundertmark Decl., Ex. 2 (390Park00000097); Loffler Opp. Decl., Ex. J (390Park00000009).

[20] Defendant ignores this "forward-dating" because, if effective dates were not allowed (and they are), it would mean that the Mortgage took effect on March 8, 2005, negating its argument that the Mortgage Assignment was dated prior to the Mortgage.

[21] Defendant does not substantively respond to Plaintiff's arguments as to why the Fifth through Ninth Affirmative Defenses do not preclude summary judgment for the Plaintiff. The Court should therefore deem those Affirmative Defenses abandoned. See Wecare Holdings, LLC v. Bedminster Int'l Ltd., No. 08-CV-6213, 2009 WL 604877, at *8 (W.D.N.Y. Mar. 9, 2009) ("In the present case, the plaintiffs moved for summary judgment, but the defendant did not address the plaintiffs' arguments concerning the eight affirmative defenses and four counterclaims in its response to the motion for summary judgment. As a result of the defendant's failure to respond to the plaintiffs'

### III.    THE COURT SHOULD AWARD PLAINTIFF'S FEES, COSTS, AND EXPENSES AND APPOINT A REFEREE

Defendant does not dispute that it is responsible for payment of all reasonable fees, costs, and expenses (including attorneys' fees).  Defendant also does not substantively argue against the appointment of a referee to compute the amount due under the Loan Documents.  Therefore, upon granting Plaintiff's Motion, the Court should award Plaintiff's fees, costs, and expenses, and appoint a referee.

### CONCLUSION

For the reasons stated above and in the Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and Motion to Appoint a Referee, Plaintiff respectfully requests that the Court enter an order (i) granting Plaintiff's Motion; (ii) entering summary judgment of foreclosure in favor of Plaintiff; (iii) appointing a referee to compute the amount due Plaintiff under the Loan Documents; and (iv) denying 390 Park's Cross-Motion for summary judgment.

Dated: April 9, 2018                     VENABLE LLP

                                         Rishi Kapoor
                                         Rockefeller Center
                                         1270 Avenue of the Americas, 24th Floor
                                         New York, New York 10020
                                         Telephone: (212) 307-5500

                                         -and-

                                         By: */s/ Heather Deans Foley*
                                         Gregory A. Cross (admitted *pro hac vice*)
                                         Heather Deans Foley (admitted *pro hac vice*)
                                         Venable LLP
                                         750 East Pratt Street, Suite 900
                                         Baltimore, Maryland 21202
                                         Telephone: (410) 244-7400

                                         *Counsel for Plaintiff*

---

arguments, the court finds that the defendant abandoned these claims relating to the eight affirmative defenses and four counterclaims and thus plaintiffs' motion for summary judgment with respect to those claims is granted.").

20122089-v4

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on April 9, 2018, a copy of the foregoing Memorandum of Law in Opposition to 390 Park Avenue Associates, LLC's Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Summary Judgment and Motion to Appoint a Referee was served electronically on the following:

> Raymond Nicola Hannigan
> Heather Robinson
> Herrick, Feinstein LLP
> Two Park Avenue
> New York, New York 10016
> *Counsel for Defendant 390 Park Avenue Associates, LLC*
>
> Janice Mac Avoy
> Fried, Frank, Harris, Shriver & Jacobson LLP
> One New York Plaza
> New York, New York 10004-1980
> *Counsel for Defendant 390 Park Avenue Associates, LLC*
>
> Jesse Ryan Loffler
> Cozen O'Connor
> One Oxford Centre
> 301 Grant Street, 26th Floor
> Pittsburgh, Pennsylvania 15219
> *Counsel for Defendant 390 Park Avenue Associates, LLC*

                          */s/  Heather Deans Foley*
                         Heather Deans Foley

20122089-v4