USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/12/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WELLS FARGO BANK, N.A.,
Plaintiff,

-against-

390 PARK AVENUE ASSOCIATES , LLC, et al.,
Defendants.

16 Civ. 9112 (LGS)

**OPINION AND ORDER**

LORNA G. SCHOFIELD, District Judge:

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo"), as Trustee for a commercial mortgage-backed security trust, brings this action "by and through" its Special Servicer CWCapital Asset Management LLC ("CWCapital") to foreclose a commercial mortgage loan. Plaintiff moves for summary judgment pursuant to Federal Rule of Civil Procedure 56, and to appoint a special master or magistrate judge pursuant to Federal Rule of Civil Procedure 53 to calculate the amount due under the loan, as well as Plaintiff's fees, costs and expenses. Defendant 390 Park Avenue Associates, LLC ("390 Park" or "Defendant") cross-moves for summary judgment.[1] For the reasons below, Defendant's motion is denied and Plaintiff's motions are granted.

# I. BACKGROUND

## A. Factual Background

The following facts are taken from the Parties' statements pursuant to Federal Rule of Civil Procedure 56.1 and the Parties' submissions on this motion.

[1] In addition to 390 Park, the Complaint names as defendants three individuals and eight entities that have mechanic's liens or other claims on the property. Plaintiff dismissed the claims against the three individuals on March 31, 2017. The eight entities with mechanic's liens have not appeared, and default judgments were entered against them on July 20, 2018.

**1. The Agreements**

On or about March 9, 2005, Defendant entered into an $110,000,000 Note and Loan Agreement evidencing a loan from Column Financial, Inc. (the "Original Lender"). On that date, Defendant and the Original Lender executed other agreements to secure the loan, including a mortgage granting the Original Lender a first priority lien on real property located at 390 Park Avenue (the "Mortgage") and an assignment of leases and rents (collectively with the Note and Loan Agreement, the "Loan Documents").

Thereafter, the Original Lender executed an undated Allonge, assigning its interest in the Note to Plaintiff as trustee for the registered holders of Credit Suisse First Boston Mortgage Securities Corp., Commercial Mortgage Pass-Through Certificates, Series 2005-C2 (the "Trust").[2] The Original Lender also executed a General Assignment, assigning its interest in the Loan Documents to the Trust, with an effective date of May 26, 2005. On March 8, 2005, the Original Lender executed an Assignment of Consolidated, Amended and Restated Leasehold Mortgage and Security Agreement (the "Mortgage Assignment"), which assigned to the Trust the Mortgage, "together with the notes and bonds or obligations described in the Mortgage," with an effective date of May 26, 2005. On April 24, 2007, the Mortgage Assignment was filed and recorded with the Office of the City Register of the City of New York.

**2. The Trust**

The Trust is a commercial mortgage-backed securities trust; it is a New York common law trust designated as a real estate mortgage investment conduit for federal income tax

---

[2] An allonge is a document attached to a negotiable instrument to provide space for additional endorsements when the original document no longer has room for endorsements. *See* Black's Law Dictionary 92 (10th ed. 2014); *accord CIT Bank, N.A. v. Howard*, No. 14 Civ. 7470, 2016 WL 6330406, at *2 (E.D.N.Y. Oct. 27, 2016).

purposes. The "Trust Fund" consists of commercial and multifamily loans, including the loan to 390 Park. The beneficiaries of the Trust are the "Certificateholders." CWCapital is the Trust's Special Servicer.

The Trust is governed by a Pooling and Servicing Agreement ("PSA"), which divides responsibility for the management of the Trust among three parties: the Trustee, Master Servicer and Special Servicer. Pursuant to the PSA, the Trustee must "hold the Trust Fund in trust for the exclusive use and benefit of all present and future Certificateholders." Transfer of a mortgage loan to the Trustee for inclusion in the Trust Fund is "absolute" and "intended by the parties to constitute a sale." The Trustee is responsible for collecting, investing and distributing the proceeds from the various loans in the Trust Fund to investors, and is authorized to take appropriate action to enforce payment or performance of the loans in the Trust Fund. The Trustee "may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents or attorneys," including, if an event of default occurs, the commencement of legal proceedings.

The Special Servicer is responsible for administration of defaulted loans and is authorized "to foreclose upon or otherwise comparably convert . . . the ownership of any property securing such Loans." Before initiating a foreclosure action, the Special Servicer must obtain the consent of the "Directing Certificateholder." The PSA limits Certificateholder control. Certificateholders generally do not have a right to vote or otherwise manage the Trust Fund. Additionally, Certificateholders cannot sue with respect to any loan held in the Trust Fund, unless a specified percentage of Certificateholders have made written demand on the Trustee, and the Trustee has refused to sue in its own name.

**3. Default**

Pursuant to the Note, the loan's outstanding principal and interest became due and payable on the maturity date: March 11, 2015. Defendant did not make payment on the maturity date, and on March 19, 2015, counsel for CWCapital, the Special Servicer, acting "[o]n behalf of the Trust," sent a default notice to 390 Park demanding payment of the outstanding amounts due under the Loan Documents. On November 22, 2016, Wells Fargo commenced this action in its own name as Trustee, by and through CWCapital. The Complaint pleads subject matter jurisdiction under 28 U.S.C. § 1332(a), because this action is between citizens of different states -- Wells Fargo is a citizen of South Dakota, while no Defendant is -- and the amount in controversy exceeds $75,000.

**B. Procedural Background**

Defendant moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that the citizenship of CWCapital or the Certificate holders -- not the citizenship of Wells Fargo -- should be considered for the purposes of determining diversity jurisdiction. Defendant argued that Wells Fargo was a "naked trustee" that acts as a "mere conduit[] for a remedy flowing to others," and, therefore, that its citizenship cannot be used for diversity jurisdiction purposes. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 465 (1980).

The motion was denied for two reasons. First, pursuant to the PSA, "Plaintiff exercises the customary powers described in *Navarro*, including the power to sue to enforce the loans," and was, therefore, an "active trustee." *Wells Fargo Bank, N.A. v. 390 Park Ave. Assocs., LLC*, No. 16 Civ. 9112, 2017 WL 2684069, at *3 (S.D.N.Y. June 21, 2017) ("*MTD Opinion*"). Second, under *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 731 (2d Cir. 2017),

"traditional common law trusts cannot sue or be sued except through their trustees, and thus it is the trustees' citizenship that must determine diversity, not the citizenship of trust beneficiaries." *Id.* (internal quotations omitted).

## II. STANDARD

Summary judgment is appropriate where the record establishes that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 148 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 154 (2d Cir. 2017) (citations omitted). When the movant has properly supported its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original) (internal quotation marks omitted); *accord Dudley*

*v. New York City Hous. Auth.*, No. 14 Civ. 5116, 2017 WL 4315010, at *14 (S.D.N.Y. Sept. 25, 2017) (citations omitted).

## III. DISCUSSION

Defendant's motion for summary judgment based on the lack of subject matter jurisdiction is denied. Plaintiff's motion for summary judgment is granted because Plaintiff has established all of the prima facie elements of foreclosure and no reasonable jury could find otherwise. Plaintiff's motions for fees, expenses, costs and appointment of a special master or magistrate judge are also granted.

### A. Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on the basis that no subject matter jurisdiction exists, recycling arguments that were rejected on Defendant's motion to dismiss. Discovery has not changed the outcome. Defendant again argues that Wells Fargo is a "naked trustee" that acts as a "mere conduit[] for a remedy flowing to others," and, therefore, that its citizenship cannot be used for diversity jurisdiction purposes under *Navarro*. *See* 446 U.S. at 458. Pursuant to *Navarro*, "A trustee is a real party to the controversy for purposes of diversity jurisdiction when he possesses certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Id.* at 464.

Defendant's argument is once again predicated upon the PSA. That document was considered in the *MTD Opinion*, and the argument rejected. The PSA requires the conclusion that Defendant was an "active trustee," because:

> The PSA provides that the transfer of loans to the Trustee is "absolute" and conveys "all the right, title and interest" in the loans; that the Trustee shall "hold the Trust Fund in trust for the exclusive use and benefit of all present and future Certificateholders;" and that the Trustee may sue to enforce payment or performance on the loans.

*MTD Opinion*, 2017 WL 2684069, at *3. Accordingly, "the PSA grants the Trustee substantially the same powers that the trustee in *Navarro* had." *Id.*

Despite the PSA, Defendant's brief cites other parts of the record, such as the testimony of the CWCapital and Wells Fargo joint 30(b)(6) witness, which, according to Defendant, illustrates that "Wells Fargo *acted* as nothing more than the passive repository of loan documents and the identity of the certificate holders of the Trust." That argument is unpersuasive because it rests on a flawed reading of *Navarro*. Defendant describes *Navarro* as standing for the proposition that, in order to be a real party in interest, a trustee must "actively exercise" the powers described in that opinion. But *Navarro* states, "A trustee is a real party to the controversy for purposes of diversity jurisdiction when he *possesses* certain customary powers to hold, manage, and dispose of assets for the benefit of others." *Navarro*, 446 U.S. at 464 (emphasis added); *see also Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 195 (2d Cir. 2003) (the party with "the *express power* to act on [others'] behalf with regard to their rights in the warrants" was the "master of the litigation" and the "real and substantial party") (emphasis added).

As a result, the relevant question is whether Plaintiffs possessed the powers described in *Navarro* under the PSA, not whether they actively exercised those powers in the day-to-day management of the Trust. The dissent in *Navarro* criticized the Court's focus on the formal powers of the trustee, rather than active management of the trust. *See Navarro*, 446 U.S. at 476 (Blackmun, J., dissenting) (describing *Navarro* as adopting "a formalistic criterion having little to do with a realistic assessment of the respective degrees of control over the trust's activities that may be exercised by shareholders and trustees"). But the dissent's functional approach does not control the outcome here.

For the reasons stated more thoroughly in the *MTD Opinion*, the PSA grants Wells Fargo the customary *Navarro* powers. 2017 WL 2684069, at *3; *see also Wells Fargo Bank, N.A. v. Konover Dev. Corp.*, 630 F. App'x 46, 49 (2d Cir. 2015) ("Wells Fargo's delegation of its powers to ORIX Capital Markets LLC does not alter Wells Fargo's status as a real party to the controversy and does not transform it into a naked trustee who acts as a mere conduit for a remedy flowing to others."); *accord U.S. Bank Nat'l Ass'n v. 2150 Joshua's Path*, LLC, No. 13 Civ. 1598, 2017 WL 4480869, at *3 (E.D.N.Y. Sept. 30, 2017) (same as to U.S. Bank as mortgage backed security trustee); *U.S. Bank, Nat'l Ass'n v. UBS Real Estate Sec. Inc.*, 205 F. Supp. 3d 386, 409 (S.D.N.Y. 2016) (same). Accordingly, the Court has subject matter jurisdiction based on diversity of citizenship, and Defendant's motion for summary judgment is denied.

**B. Plaintiff's Motion for Summary Judgment**

Pursuant to New York law, a plaintiff demonstrates prima facie entitlement to judgment as a matter of law in a foreclosure action "by submitting the mortgage, the unpaid note, and evidence of the defendant's default." *Wells Fargo Bank, N.A. v. Morgan*, 32 N.Y.S.3d 595, 139 A.D.3d 1046, 1048 (2d Dep't 2016); *see also United States v. Starr*, No. 16 Civ. 1431, 2017 WL 4402573, at *2 (S.D.N.Y. Sept. 29, 2017) ("In a New York mortgage foreclosure action, a plaintiff makes a prima facie case -- with summary judgment appropriate if nothing else is shown -- where the foreclosing party produces documentary evidence establishing the three elements of a foreclosure claim: (1) a mortgage, (2) a note, and (3) proof of default on the note by the mortgagor."). "As a general matter, once a promissory note is tendered to and accepted by an assignee, the mortgage passes as an incident to the note." *Bank of New York v. Silverberg*, 926 N.Y.S.2d 532, 86 A.D.3d 274, 279 (2d Dep't 2011); *accord CIT Bank, N.A. v. Portfolio*

*Recovery Assocs., LLC*, No. 15 Civ. 8618, 2017 WL 2819867, at *5 (S.D.N.Y. June 28, 2017) (applying New York law).

"Once the plaintiff has established its prima facie case by presenting the note, mortgage, and proof of default, the mortgagee has a presumptive right to foreclose, which can only be overcome by an affirmative showing by the mortgagor that the mortgagee has engaged in fraud, duress, oppressive or unconscionable actions, or bad faith." *U.S. Bank Tr., N.A. v. Dingman*, No. 16 Civ. 1384, 2016 WL 6902480, at *2 (S.D.N.Y. Nov. 22, 2016) (citing *First Nat'l Bank of Highland v. J. & J. Milano, Inc*., 553 N.Y.S.2d 448, 160 A.D.2d 670, 671 (2d Dep't 1990)); *accord In re Nissan Litig*., No. 17 Civ. 729, 2018 WL 2113228, at *6 (S.D.N.Y. May 8, 2018) (applying New York law).

No dispute of material fact exists with respect to any of the three prima facie foreclosure requirements. Defendant admits in its 56.1 counter-statement that it has defaulted on the loan; accordingly, the third requirement is satisfied. Defendant argues, however, that the first two requirements -- the Mortgage and Note -- are disputed, and that summary judgment is therefore inappropriate because "there are material disputes of fact as to whether Plaintiff has standing." For the reasons below, there are no disputes of material fact with respect to these requirements, and Plaintiff's motion for summary judgment is granted.[3]

---

[3] Defendant's Answer asserts thirteen affirmative defenses. Because Defendant raises arguments with respect to only two affirmative defenses -- lack of subject matter jurisdiction and standing -- the other eleven are waived. *See, e.g., Lin v. Sessions*, 681 Fed.Appx. 86, 88 (2d Cir. 2017) (summary order) ("Issues not sufficiently argued in the briefs are considered waived . . . ."); *Pirnik v. Fiat Chrysler Automobiles, N.V.*, No. 15 Civ. 7199, 2018 WL 3130596, at *2 n. 2 (S.D.N.Y. Jun. 26, 2018) (same).

**1. Physical Possession**

A plaintiff's physical possession of a note at the time the complaint is filed establishes the mortgage and note elements of the plaintiff's prima facie case. *See, e.g., U.S. Bank, N.A. v. Adrian Collymore*, 890 N.Y.S.2d 578, 68 A.D.3d 752, 754 (2d Dep't 2009) ("Either a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident."); *accord Nationstar Mortg. LLC v. Hunte*, No. 16 Civ. 8708, 2018 WL 1229708, at *4 (S.D.N.Y. Mar. 5, 2018) (applying New York law). Under New York law, any transfer of a note necessarily includes a transfer of the mortgage. *See, e.g., Aurora Loan Servs., LLC v. Taylor*, 25 N.Y.3d 355, 361 (2015) ("Once a note is transferred . . . the mortgage passes as an incident to the note."). Accordingly, possession of a note also satisfies the mortgage requirement.

Here, Plaintiff was in possession of the Note when Plaintiff filed the action, as evidenced by the Note and Mortgage attached to the Complaint. Defendant does not dispute that Plaintiff possessed the original Note when the Complaint was filed, and Defendant admits that it inspected documents -- "including one original of the note" -- at the office of Plaintiff's counsel 12 days after the Complaint was filed. Accordingly, there is no dispute of material fact with respect to Plaintiff's possession of the Note -- and thus the Mortgage -- when the Complaint was filed.

Defendant argues that Plaintiff's possession of an original Note is insufficient because there may have been more than one original of the Note, and Plaintiff must possess all originals in order to establish its prima facie case via physical possession. Specifically, Defendant contends, based on the "Document Delivery Checklist" used at closing, that it is "unclear if there

are more than one original Note or Allonge," and that at least one of the originals might have been sent to Deutsche Bank.[4] Defendant does not claim that there *is* a second original of the Note, just that there is the "potential . . . that there *may* be multiple originals." (emphasis added).

This argument is inapposite for two reasons. First, "a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Baines*, 593 F.3d at 166. Second, Defendant does not cite any caselaw for the proposition that "a Plaintiff must demonstrate that it is in possession of all of the physical originals of the note . . . .," and no such authority is readily apparent. Rather, "New York courts have repeatedly held that proof of physical possession . . . is sufficient *on its own* to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016) (emphasis added) (collecting New York cases). Plaintiffs have "no obligation to provide details pertaining to the transfer or delivery of a note in order to prove its standing to foreclose on the associated mortgage" -- let alone any obligation to prove the non-existence of a hypothetical second original. *Id.* (collecting New York cases).[5]

Defendant cites only two New York cases with respect to this subject, and neither is persuasive. In both cases, there was a dispute over whether the plaintiff had an original note at the time their complaints were filed. *See B & H Fla. Notes LLC v. Ashkenazi*, 51 N.Y.S.3d 59, 149 A.D.3d 401, 403 (1st Dep't 2017) (reversing a grant of summary judgment where "plaintiff was inconsistent as to whether it physically held the note at the time it commenced this foreclosure action"); *Nationstar Mortg., LLC v. Davidson*, 983 N.Y.S.2d 705, 116 A.D.3d 1294,

---

[4] The Document Delivery Checklist does not suggest, as Defendant asserts, that there may have been more than one note. The document indicates next to "Promissory Note" that the document is required, enclosed and is the "Original."

[5] It is also immaterial whether and under what circumstances certain original loan documents may have been sent to, or retrieved from, Deutsche Bank.

1295 (3rd Dep't 2014) (upholding a bench trial determination that a plaintiff had possession of an original note at the time they filed their complaint). By contrast, here, it is undisputed that Plaintiff had an original Note when the Complaint was filed. Defendant here disputes only a legally immaterial fact -- whether Plaintiff possessed *all* originals of the Note at the time it filed the Complaint -- not whether Plaintiff possessed *an* original of the Note at the time that it filed the Complaint.

**2. Written Assignment**

Even if Plaintiff could not establish its prima facie case via physical possession, it can establish its prima facie case based on written assignment. *See Collymore*, 68 A.D.3d at 754; *see also U.S. Bank Nat. Ass'n v. Guy*, 5 N.Y.S.3d 116, 125 A.D.3d 845, 846-47 (2d Dep't 2015) ("The plaintiff may demonstrate that it is the holder or assignee of the underlying note by showing either a written assignment of the underlying note or the physical delivery of the note."). Here, the Mortgage Assignment establishes that Plaintiff is the holder of the Mortgage and Note.

The Mortgage Assignment assigns to the Trust, "[t]hose certain Mortgages listed on Schedule B attached hereto (collectively, the "Mortgage"), encumbering the Premises; together with the notes and bonds or obligations described in the Mortgage . . . ." This language is sufficient to assign both the Mortgage and underlying Note to Plaintiff. "No special form or language is necessary to effect an assignment as long as the language shows the intention of the owner of a right to transfer it." *Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*, No. 12 Civ. 4025, 2013 WL 6667601, at *17 (S.D.N.Y. Dec. 17, 2013) (citing *Silverberg*, 86 A.D.3d at 280-81); *see also Condren, Walker & Co. v. Portnoy*, 856 N.Y.S.2d 42, 48 A.D.3d 331, 331 (1st Dep't 2008) ("No particular words are necessary to effect an

assignment; it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a present right in the things assigned.”). Here, the language used in the Mortgage Assignment “was broad enough to transfer the interest in the mortgage as well as the underlying debt secured by the note,” *Chase Home Fin., LLC v. Miciotta*, 956 N.Y.S.2d 271, 101 A.D.3d 1307, 1308 (3rd Dept. 2012), and Defendant makes no argument to the contrary. Defendant also does not dispute that the Mortgage Assignment was filed and recorded on April 24, 2007.

Defendant argues that the Mortgage Assignment cannot establish Plaintiff’s prima facie case, because “there are several versions of the Mortgage Assignment that have been produced in this case: (i) an undated, blank mortgage assignment (Ex. D (Trust0000172-73)); and (ii) a mortgage assignment, which was attached to the complaint (Dkt. Nos. 1-10), dated a day before the effective date of the Mortgage.” Neither document creates a material issue of fact.

First, the existence of the undated and blank version of the Mortgage Assignment is immaterial precisely because it is undated and blank. As the document does not even contain the name of an assignee, it does not “show[] the intention of the owner of a right to transfer it” and is ineffective. *Silverberg*, 86 A.D.3d at 280–81. “An ineffective written mortgage assignment has no effect on the plaintiff’s status as owner and/or holder of the note and mortgage through its possession of the note at the time of the commencement of the action.” *1077 Madison St., LLC v. Smith*, No. 13 Civ. 7182, 2015 WL 5793427, at *12 (E.D.N.Y. Sept. 30, 2015) (applying New York law) (internal quotations omitted). Accordingly, the existence of a blank version of the assignment has no effect on the validity of the subsequent filled out Mortgage Assignment.

Second, the use of a prospective effective date also does not invalidate the Mortgage Assignment. Retrospective effective dates are sometimes invalid: “a retroactive assignment

cannot be used to confer standing upon the assignee in a foreclosure action commenced prior to the execution of the assignment," because "the fiction of retroactivity . . . should not be applied to affect adversely the rights of third persons." *Wells Fargo Bank, N.A. v. Marchione*, 887 N.Y.S.2d 615, 69 A.D.3d 204, 210 (2d Dep't 2009). But a prospective effective date does not raise such problems, because it is not a "fiction;" rather, "the general rule is that mortgage note assignments must be effective prospectively, rather than retroactively." *Deutsche Bank Nat. Tr. Co. v. Torres*, 5 N.Y.S.3d 327 (N.Y. Sup. 2014) (citing *Countrywide Home Loans, Inc. v. Gress*, 68 A.D.3d 709 (2d Dep't 2009)); *see, e.g.*, *Comptroller of State v. Level Acres LLC*, 21 N.Y.S.3d 908, 134 A.D.3d 1528, 1528 (4th Dep't 2015) (finding an assignment with a prospective effective date valid because, "[w]here parties to an agreement expressly provide that a written contract be entered into 'as of' a specific date other than that on which it was executed, the agreement is effective 'as of' the specific date and the parties are bound thereby accordingly.") (internal citations and alterations omitted); *see also* N.Y. U.C.C. Law § 3-114 (McKinney) ("The negotiability of an instrument is not affected by the fact that it is undated, antedated or postdated."). Accordingly, the use of a prospective effective date does not invalidate the Mortgage Assignment.[6]

**C. Plaintiff's Motion for Fees, Costs and Expenses**

Plaintiff's motion for fees (including attorneys' fees), costs and expenses is granted. "Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear." *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir.

---

[6] The Allonge, General Assignment and/or PSA also could have effectuated a written assignment, but these documents are not discussed as the Mortgage Assignment accomplished the assignment.

2008); *accord Praesidian Capital Opportunity Fund III v. Persinger*, No. 17 Civ. 8376, 2018 WL 1578365, at *2 (S.D.N.Y. Mar. 28, 2018) (applying New York law).

Here, pursuant to § 10.13 of the Loan Agreement, Defendant agreed to reimburse "all reasonable costs and expenses (including reasonable attorneys' fees and disbursements)" incurred with respect to actions "enforcing any obligations or collecting any payments due from Borrower under this Agreement, the other Loan Documents or with respect to the Property . . . ." Likewise, pursuant to § 7.3 of the Mortgage, Defendant must reimburse the "cost and expense" of any action to foreclose on the Mortgage, "including reasonable attorneys' fees to the extent permitted by law," with "interest thereon calculated at the Default Rate." These provisions are "sufficiently clear" to be enforceable. *See, e.g.*, *Gaia House Mezz LLC v. State St. Bank & Tr. Co.*, 720 F.3d 84, 95 (2d Cir. 2013) (upholding a fee provision in a loan contract).

**D. Plaintiff's Motion to Appoint a Referee, Special Master or Magistrate Judge**

Plaintiff's motion to appoint a magistrate judge is granted. Pursuant to Federal Rule 53 *et seq*., a court may appoint a master or magistrate judge to "perform an accounting or resolve a difficult computation of damages," which is sometimes advisable in mortgage foreclosure cases. *See, e.g.*, *CIT Bank, N.A. v. Metcalfe*, No. 15 Civ. 1829, 2017 WL 3841852, at *1-2 (E.D.N.Y. Sept. 1, 2017) (appointing a special master to calculate "the outstanding principal, accrued late charges, related expenses and attorneys' fees" with respect to a mortgage foreclosure). Likewise, upon awarding summary judgment to a plaintiff in a foreclosure action, the New York Real Property Acts Law allows for the appointment of a referee. *See, e.g.*, *U.S. Bank Tr., N.A. v. Dingman*, No. 16 Civ. 1384, 2016 WL 6902480, at *3 (S.D.N.Y. Nov. 22, 2016) (appointing a referee to calculate damages and sell the property after awarding summary judgment to a

foreclosing plaintiff) (applying N.Y. Real Prop. Acts. Law § 1321; 1351; 1611). The case is referred to Magistrate Judge Parker for this determination.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is DENIED. Plaintiff's motions for summary judgment, fees, costs, expenses and to appoint a magistrate judge are GRANTED. The case is referred to Magistrate Judge Parker for a determination of the amount due under the Loan Documents, as well as Plaintiff's fees, costs and expenses.

The Clerk of Court is respectfully directed to close the motions at Docket Nos. 130 and 136.

Dated: September 12, 2018
New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE